**In re John V. PANERAS a/k/a Ioanis V. Paneras, Debtor.**

**Teresa J. STERNA f/k/a Teresa J. Paneras, Plaintiff,**

v.

**John V. PANERAS a/k/a Ioanis V. Paneras, Defendant.**

**Bankruptcy No. 95 B 00864.**
**Adversary No. 95 A 00437.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

April 29, 1996.

Mary L. Walker, Northbrook, IL, for Teresa J. Sterna.

M. Scott Michel, United States Trustee, Chicago, IL.

Martin Y. Joseph, Chicago, IL, for John V. Paneras.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the third amended complaint filed by Teresa J. Sterna ("Teresa") against John V. Paneras ("John") to determine whether two debts are nondischargeable under 11 U.S.C. § 523(a)(5) (Count I); 11 U.S.C. § 523(a)(15) (Count II); and 11 U.S.C. § 523(a)(2)(A) (Count III). For the reasons set forth below, the Court holds that the debts are dischargeable under § 523(a)(5) as they are not in the nature of maintenance and support obligations. The Court also holds that the debts are dischargeable under § 523(a)(15) because the evidence showed that John does not have the ability to pay the debts at the present time, or in the reasonably foreseeable future. Discharging the debts in this case will result in a benefit to John that outweighs the detriment to Teresa because those debts were previously satisfied by her and released by those creditors. The Court further holds that Teresa has sustained her burden of proof under § 523(a)(2)(A). Hence, the debts are nondischargeable thereunder. Accordingly, judgment will be entered in favor of Teresa on Count III, and in favor of John on Counts I and II of the complaint.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

Teresa and John married on February 23, 1991. Both had been previously married. One of the problems that led to the failure of their marriage was that John's prior marriage was not finally terminated in Greece until February 18, 1993. See Plaintiff's Exhibit No. 20. Notwithstanding John's bigamy pro tempore, the parties continued to live together and cohabitate until a separation resulted in a marital dissolution action filed in 1993. Their marriage was dissolved on November 22, 1994. See Plaintiff's Exhibit No. 5. A marital settlement agreement (the "Agreement") was entered into on that date. Id. The Agreement contained various terms and provisions, including those for the two debts which are the subject of this matter: a $20,000.00 installment note dated July 21, 1992, secured by a trust deed on Teresa's residence in Northbrook, Illinois, in favor of S & S Investments (Plaintiff's Exhibit No. 23); and a $21,500.00 promissory note dated February 28, 1994, secured by a second mortgage on Teresa's residence, in favor of George Kalkounos ("Kalkounos") (Plaintiff's Exhibit No. 24). Both notes, the trust deed, and second mortgage were executed by Teresa and John. Teresa contends that the proceeds of the loan from S & S Investments were used to pay for attorney's fees for John. He denies this and claims all the proceeds were used for Teresa's benefit. It is undisputed that John had the full benefit from the proceeds of the Kalkounos loan.

Pursuant to the Agreement, Teresa was to pay the debt owed to S & S Investments, and John was to pay the debt to Kalkounos by January 16, 1995. If John did not pay by that date, however, he would also be responsible for the S & S Investments debt. See Agreement, Article V, ¶ 1; Plaintiff's Exhibit Nos. 2 and 3. The parties expressly agreed, by a marginal note on the last referenced exhibit, that the Kalkounos debt was "NOT DISCHARGEABLE IN BANKRUPTCY." See Plaintiff's Exhibit No. 2.

The parties' dissolution of marriage only legally terminated their marital relationship,

it did not solve their respective financial problems. John paid neither the Kalkounos nor the S & S Investments debts, but instead filed a Chapter 7 case on January 13, 1995. Creditors were pressing Teresa for payment of the debts with the result that she sold her home on March 22, 1995, to avoid its foreclosure. Teresa netted no cash or equity from the sale. See Plaintiff's Exhibit No. 7. The S & S Investments debt was paid from the closing proceeds and thus satisfied. The Kalkounos debt was not paid in full. Kalkounos, however, released his lien and Teresa for partial satisfaction of the debt out of the sale proceeds.

Teresa's financial situation worsened with the result that she filed a Chapter 13 case on August 15, 1995. The case was assigned to the Honorable Erwin I. Katz. *See* Defendant's Exhibit No. 2. A review of the docket reveals that the case was converted to a Chapter 7 proceeding on November 9, 1995; the Chapter 7 case trustee filed a no asset report on December 29, 1995; and the time for creditors to object to her discharge expired on February 20, 1996, with no such complaints filed.[1] In due course Teresa will likely receive her discharge in that case.

Teresa filed the original complaint in this matter on April 28, 1995, alleging that the subject debts are nondischargeable as support or maintenance obligations under § 523(a)(5) (Count I), or alternatively, as nondischargeable property settlement obligations under § 523(a)(15) (Count II). In defense of the claim under § 523(a)(5), John relies on Article III of the Agreement which provides that Teresa waives all other maintenance and alimony. In defense of the claim under § 523(a)(15), John argues that the debts, though in the nature of property settlement, are ones that he cannot pay and that in balancing his circumstances compared to Teresa's, the equities weigh more in favor of his discharge from the obligations than the detriment to Teresa if they are not discharged. At the trial, John testified that he had been unemployed since October 1995, and had received gifts from a friend to live on so he would not be evicted from his apartment and his Mercedes automobile would not be repossessed. At the time of trial, Teresa was gainfully employed in a management capacity for a major insurance company.

Teresa amended the complaint to add a third theory. In Count III she alleges that the two debts were incurred by John's fraudulent acts, and thus, should be found nondischargeable under § 523(a)(2)(A). Teresa maintains that John fraudulently misrepresented many things to her, including that he was supposedly divorced from his prior spouse at the time he induced Teresa into their marriage. Teresa contends that had she known that John's prior marriage had not been finally terminated at the time of the S & S Investments loan, she would not have agreed to become indebted on that obligation with him. She contends she only agreed to become liable on the Kalkounos debt because John represented to her that he would have funds available to repay it in a few days after it was incurred. Teresa alleges that John fraudulently failed to fully disclose his income and assets and that he thereby induced her into consenting to the Agreement terms with respect to both debts. John defends that at the time of their marriage, his prior marriage had been civilly ended in Greece, although his canon divorce was not final. He denies that he misrepresented anything to Teresa or committed any fraud.

The trial concluded on April 2, 1996, and the parties were given until April 16, 1996 to complete their post-trial submissions. The matter was then taken under advisement.

### III. *DISCUSSION*

#### A. *Applicable Standards*

The party seeking to establish an exception to discharge bears the burden of proof. *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983). The burden of proof under § 523 is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). The discharge provisions of § 523 are construed strictly against the creditor and liberally in

---

1. The Court can take judicial notice of these matters as part of that case file.

favor of the debtor. *Domino's Pizza, Inc. v. Pochel (In re Pochel),* 64 B.R. 82, 84 (Bankr. C.D.Ill.1986).

## B. *Count I*

Teresa claims that the debts are nondischargeable under § 523(a)(5), which states in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement....

11 U.S.C. § 523(a)(5).

■ A debt owed to a former spouse or a debt to be paid to a third party in the nature of alimony, maintenance, or support pursuant to a divorce decree is nondischargeable in bankruptcy under § 523(a)(5). *See In re Coil,* 680 F.2d 1170, 1171 (7th Cir.1982); *Maitlen v. Maitlen (In re Maitlen),* 658 F.2d 466, 468 (7th Cir.1981); *Bradaric v. Bradaric (In re Bradaric),* 142 B.R. 267, 269 (Bankr. N.D.Ill.1992). The determination of whether a debt is in the nature of alimony, maintenance or support is a matter of federal bankruptcy law rather than state law. *Haas v. Haas (In re Haas),* 129 B.R. 531, 536 (Bankr. N.D.Ill.1989); *Smith v. Barbre (In re Barbre),* 91 B.R. 846, 848 (Bankr.S.D.Ill.1988); *Seidel v. Seidel (In re Seidel),* 48 B.R. 371, 373 (Bankr.C.D.Ill.1984). In determining whether an obligation is a liability for support, the Court must look to the substance of the obligation and not to labels imposed by state law. *See In re Woods,* 561 F.2d 27, 29 (7th Cir.1977); *Maitlen,* 658 F.2d at 468; *Nichols v. Hensler,* 528 F.2d 304, 307 (7th Cir.1976); *Doss, Puchalski, Keenan & Bargiel, Ltd. v. Cockhill (In re Cockhill),* 72 B.R. 339, 341 (Bankr.N.D.Ill.1987). This is not to say, however, that state law is irrelevant. On the contrary, state law may in fact provide relevant guidance. *See Calisoff v. Calisoff (In re Calisoff),* 92 B.R. 346, 352 (Bankr.

N.D.Ill.1988). Thus, "it is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance." *Woods,* 561 F.2d at 29.

■ Section 523(a)(5) sets out three requirements that must be met in order for a debt to be nondischargeable: (1) the underlying debt must be in the nature of alimony, maintenance, or support; (2) it must be owed to a former spouse or child; and (3) the debt must be incurred in connection with a separation agreement, divorce, or property settlement agreement. *Kinnally v. Fonnemann (In re Fonnemann),* 128 B.R. 214, 217 (Bankr.N.D.Ill.1991) *citing Haas,* 129 B.R. at 536.

Of the three elements, John disputes only the first. John contends that his obligations under the Agreement with respect to both debts are in the nature of property settlement. Teresa maintains that she agreed to take less in support and maintenance payments from John because of his agreement to pay those debts under the terms of the Agreement.

■ In determining whether a debt is in the nature of support or maintenance or whether it is properly characterized as a division of property, courts have considered the following factors:

(1) whether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support);

(2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support);

(3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support);

(4) the characterization of the obligation in the decree (obligations described as support indicate the obligation was for support);

(5) the placement of the obligation in the decree (obligations under the heading sup-

port indicate the obligation was for support);

(6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support);

(7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support);

(8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support); and

(9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support).

*See Woods,* 561 F.2d at 29; *Maitlen,* 658 F.2d at 468; *Coil,* 680 F.2d at 1172; *Wright v. Wright (In re Wright),* 184 B.R. 318, 321 (Bankr.N.D.Ill.1995); *Daulton v. Daulton (In re Daulton),* 139 B.R. 708, 710 (Bankr. C.D.Ill.1992). *Coil* notes that the underlying debt must be in the nature of support. 680 F.2d at 1172. The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts. *Elkhatib v. Elkhatib (In re Elkhatib),* 108 B.R. 650, 652 (Bankr.N.D.Ill.1989). The effect and the function of the obligation imposed is also an important criterion.

■ The Agreement, which both parties executed while represented by attorneys, provides in Article II for a lump sum periodic allowance to Teresa totaling $7,000.00, which was subsequently paid by John. Article III, ¶ 2 of the Agreement expressly states that:

Except as otherwise provided in Article II above, the Wife waives all claims or rights held or asserted by her against the Husband for periodic allowance, support or maintenance, past, present and future. Except as otherwise provided in Article II above, the Wife shall have no further claims against the Husband for periodic allowances, support or Maintenance and she shall be forever barred from asserting such claims against him. This waiver of maintenance by the Wife shall be non-modifiable.

*See* Plaintiff's Exhibit No. 5. Article IV deals with property settlement and paragraph 1 specifically concerns Teresa's residence, which was to remain her property. She was to assume full responsibility for all loans and liens encumbering that property, except the provisions dealing with the two subject debts. Article V contains the provisions regarding the Kalkounos loan, which John was to satisfy by January 16, 1995. In the event he did not, John then was also to become obligated to satisfy the S & S Investments debt. The parties initialed a holographic marginal insertion that states: "DEBT TO KALKOUNOS IS NOT DISCHARGEABLE IN BANKRUPTCY."

The Court has considered all the *Woods* factors. John's obligations under the Agreement with respect to the subject debts were not to terminate upon either parties' death or remarriage. By their own terms, both debts had matured by the time of the Agreement. Teresa testified that the allocation of those debts was to balance the parties' respective incomes. The debts are characterized and placed in both the property settlement and debt allocation portions of the Agreement, not in the maintenance portions thereof. References to the debts contain no indication that they were intended to be in lieu of or as additional maintenance or support for Teresa. Rather, Teresa expressly waived any such additional claims therefor under Article III, ¶ 2 of the Agreement. The parties had no children from their marriage. Further, the parties' respective evidence of their then income and earnings (Plaintiff's Exhibit Nos. 4, 6, 9, and 19 and Defendant's Exhibit No. 4) indicates a disparity, with John earning more income than Teresa at that time. The debts were not referenced or apparently thought to be taxable to Teresa or deductible by John.

The parties expressly agreed to waive any additional or future claims for support or maintenance against each other, which is the most telling evidence of their mutual intent and agreement. The Court cannot ignore this evidence despite Teresa's contrary self-serving statements at trial. The parties' relative disparity of income at the time of the dissolution, standing alone, does not alter the character of the debts. *Compare* Plaintiff's

Exhibit Nos. 6 and 9; *see also* Plaintiff's Exhibit No. 10. The effect and the function of the provisions in the Agreement was to treat the debts as part of the parties' property settlement and not as additional maintenance or support to Teresa. Thus, the Court concludes that the debts were in the nature of property settlement, not support or maintenance obligations. Accordingly, the relief sought is denied under Count I. Judgment will be entered in John's favor on Count I.

 The marginal reference to the Kalkounos debt being nondischargeable in bankruptcy is not outcome determinative. The notation is ambiguous at best. It did not identify under what basis or provision in the Bankruptcy Code the debt was nondischargeable. More importantly, however, for public policy reasons, no weight should be given to language that excepts a debt from discharge in bankruptcy. *Klingman v. Levinson (In re Levinson)*, 58 B.R. 831, 836–37 (Bankr.N.D.Ill.1986), *aff'd*, 66 B.R. 548 (N.D.Ill.1986), *aff'd*, 831 F.2d 1292, 1296 n. 3 (7th Cir.1987). Debtors may not contract away the right to the dischargeability of a debt in advance of the bankruptcy case. *Id.*

## C. *Count II*

Teresa alternatively claims that the debts are nondischargeable under § 523(a)(15). The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (Oct. 22, 1994), created § 523(a)(15) to except from discharge certain obligations in the nature of marital property settlements which are not in the nature of alimony or support. Section 523(a)(15) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

 In order to except the debt from dischargeability under § 523(a)(15), Teresa must establish that she holds a claim against John other than the kind described in § 523(a)(5), that was awarded by a court in the course of a divorce proceeding or separation. *See Silvers v. Silvers (In re Silvers)*, 187 B.R. 648, 649 (Bankr.W.D.Mo.1995). Once Teresa demonstrates this, the burden of going forward shifts to John to show either (1) that he lacks the ability to pay the debt from income or property not needed to support himself and any dependents, or (2) that the discharge would be more beneficial to John than detrimental to Teresa. *See Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 764 (Bankr.N.D.Ill.1996) (citations omitted); *see also Florez v. Florez (In re Florez)*, 191 B.R. 112, 115 (Bankr.N.D.Ill.1995); *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952–53 (Bankr.S.D.Cal.1996)

Generally, the party seeking an exception to the discharge bears the burden of proof by a preponderance of the evidence. *Grogan*, 498 U.S. at 286–87, 111 S.Ct. at 659–60. To discharge certain debts, such as student loans, however, the Bankruptcy Code shifts the burden to the debtor to prove entitlement to discharge. *See* 11 U.S.C. § 523(a)(8). Judge DeGunther in the *Hill v. Hill (In re Hill)*, 184 B.R. 750 (Bankr. N.D.Ill.) case held that § 523(a)(15) requires a debtor to prove entitlement to the exception. 184 B.R. at 753–54. *Accord Phillips v. Phillips (In re Phillips)*, 187 B.R. 363, 368 (Bankr.M.D.Fla.1995). *Hill* further held that "[t]he burden shift amplifies the policy

that even though the debtor ordinarily is entitled to a discharge of debts in bankruptcy, the debtor must at times show he or she is deserving of the dischargeability of a particular debt." 184 B.R. at 754.

■ Section 523(a)(15) is concerned with the relative positions of the parties at the time of the bankruptcy, not at the time of the dissolution, which is the critical focal point in time for § 523(a)(5) determinations. *See Becker v. Becker (In re Becker)*, 185 B.R. 567, 570 (Bankr.W.D.Mo.1995). At what point in time during the bankruptcy is not precisely spelled out in the statute. Is it at the time of the petition filing; the time the dischargeability complaint is filed, *see Hill*, 184 B.R. at 754; the time of trial, *see Collins v. Hesson (In re Hesson)*, 190 B.R. 229, 238 (Bankr.D.Md.1995), *Gantz v. Gantz (In re Gantz)*, 192 B.R. 932, 934–35 (Bankr.N.D.Ill. 1996), *Morris*, 193 B.R. at 952–53, and *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky.1996); the time of entry of discharge; or some other time before the case is closed?

■ Regardless of the identity of the party who brings the evidence into the record, for John to have the debts covered by his discharge, the evidence must show either that John cannot pay the debts or that his nonpayment of the debts does not impose a detriment on Teresa that outweighs the benefit of his discharge. John must meet the showing required on only one of the two prongs of § 523(a)(15) to prevent the debts from being excepted from discharge, *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 201 (Bankr.S.D.Ohio 1995); *Florez*, 191 B.R. at 115 (involving only § 523(a)(15)(A)), because the two prongs of § 523(a)(15) are linked with the disjunctive "or" rather than the conjunctive "and." Under § 523(a)(15)(A), *Hill* utilized the disposable income test of 11 U.S.C. § 1325(b)(2)[2] to aid the court in its determination of whether the "debtor does not have the ability to pay." 184 B.R. at 755. The disposable income test analyzes "wheth-er the debtor's budgeted expenses are reasonably necessary." *Id.* *Hill's* approach was followed by *Phillips*, 187 B.R. at 368–69 and *Hesson*, 190 B.R. at 237. *See also Woodworth v. Woodworth (In re Woodworth)*, 187 B.R. 174, 177 n. 1 (Bankr. N.D.Ohio 1995). The Court agrees and will follow the *Hill* court's utilization of this standard for purposes of § 523(a)(15)(A).

■ Turning to § 523(a)(15)(B), the legislative history reveals that if discharging the debtor would inflict little or no detriment on the nondebtor spouse, the debt must be discharged. See 140 Cong.Rec. H10752–1 (daily ed. Oct. 4, 1994). Courts examining the issue have weighed several factors and applied a totality of the circumstances test. Those factors include: (1) the income and expenses of both parties; (2) the nature of the debt; and (3) the former spouse's ability to pay. *See Hill*, 184 B.R. at 756; *Florio v. Florio (In re Florio)*, 187 B.R. 654, 658 (Bankr.W.D.Mo.1995); *Carroll*, 187 B.R. at 200–01. All of those factors have been considered here. Several courts have found that equity weighs against discharge where the debtor has the ability to pay a debt. *Carroll*, 187 B.R. at 201 ("Discharging this obligation would simply provide Debtor with additional disposable income to 'use at his discretion.' This is not the type of benefit that § 523(a)(15)(B) sought to protect."); *Florio*, 187 B.R. at 658 (quoting *Carroll*).

■ In light of the findings made regarding Count I, the Court finds that both debts were John's property settlement obligations to repay after January 16, 1995 under the Agreement. Thus, the claims held by Teresa against John are other than of a kind under § 523(a)(5). The burden of going forward shifts to John to show that he either lacks the ability to pay the debts from income or property not needed to support himself and any dependents, for purposes of § 523(a)(15)(A), or that his discharge in this case will be more beneficial to him than the detriment to Teresa if he does not indemnify

---

**2.** Section 1325(b)(2)(A) provides:
 (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

 (A) for the maintenance or support of the debtor or a dependant of the debtor. . . .
 11 U.S.C. § 1325(b)(2)(A).

her for the amounts she paid on the two debts, for purposes of § 523(a)(15)(B). *See Taylor*, 191 B.R. at 764; *Hill*, 184 B.R. at 753–54.

Based on the evidence adduced at trial, John has sustained his burden and come forward with undisputed evidence that he lost his job in October 1995, and has no regular source of income or other assets with which to repay Teresa for the amounts she payed on the debts. Both prior to and at the time of trial, he was delinquent in his car payments and had received a notice of default and intent to repossess the vehicle. *See* Defendant's Exhibit No. 1. John was also delinquent on the rent for his apartment and had received the statutory five day notice from his landlord demanding payment in full of the rental arrearage and stating an intent to terminate his lease in the event the arrearage was not paid. *See* Defendant's Exhibit No. 3. There is no evidence that John will imminently regain employment or otherwise become self-supporting and able to repay Teresa at the present time, or in the reasonably foreseeable future, using the disposable income standards of § 1325(b)(2)(A) and (B). Although John was employed at the time he filed his petition, his circumstances have changed for the worse.

Absent a specific time referenced in the statute, and lacking a rule for guidance, the Court will consider the parties' relative positions not only at the time of the petition, but also throughout the time of trial, in light of any reasonably foreseeable short-term future prospects for the parties as indicated by the evidence adduced. The Court will consider the parties' relative situations at the time of trial, as well as at the time of the bankruptcy filing, to be relevant evidence for purposes of the determination under § 523(a)(15). The Court will consider the parties' financial situations in the intervening period relevant as well, not only for making the difficult projections of John's future disposable income under the § 1325(b) tests for purposes of the § 523(a)(15)(A) analysis, but also for the equitable balancing required under § 523(a)(15)(B).

Principally using an economic analysis, John wins under either prong of § 523(a)(15).

He has no present ability to pay Teresa for the debts she paid, nor is there any evidence to support a finding that he will likely have sufficient disposable income to do so in the reasonably foreseeable future. Teresa's arguments to the contrary are speculative. The economic benefit to John of a discharge from his obligation for the debts is greater than the detriment to Teresa if he does not pay because the underlying obligations were satisfied and paid out of the closing proceeds from the sale of her former residence. Neither creditor can pursue Teresa in the future. Furthermore, Teresa's present situation is economically more favorable given her improved employment and fresh start in her case. Thus, the policy favoring discharge and narrowly construing and applying discharge objections is further served by finding in John's favor under § 523(a)(15).

### D. *Count III*

Lastly, Teresa alleges that the debts are nondischargeable pursuant to § 523(a)(2)(A), which provides in relevant part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses, and false representation. The Seventh Circuit requires the Court to apply a single test to prove the three types of misconduct even though intent is an integral part of "fraud" and not of "false pretenses" and "a false representation." *See Mayer v. Spanel Int'l Ltd. (In re Mayer)*, 51 F.3d 670, 674–76 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995); *see also Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 957–58 (Bankr.N.D.Ill. 1995); *AT & T Universal Card Services v.*

*Alvi (In re Alvi),* 191 B.R. 724, 728 (Bankr. N.D.Ill.1996).

In order to except "false pretenses," "fraud," or a "false representation" from dischargeability under § 523(a)(2)(A), Teresa must establish the following elements: (1) John obtained Teresa's obligations for the debts through false pretenses or representations he either knew to be false, or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) John possessed the requisite scienter, i.e., he actually intended to deceive Teresa; and (3) to her detriment, Teresa justifiably relied on the misrepresentations. *See Field v. Mans,* ⸺ U.S. ⸺, ⸺, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *Mayer,* 51 F.3d at 673; *In re Sheridan,* 57 F.3d 627, 635 (7th Cir. 1995); *Goldberg Securities, Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 525 (7th Cir. 1992). An intent to deceive may be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor. *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 423–24 (7th Cir.1985). Fraudulent intent can be established by circumstantial evidence. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh),* 165 B.R. 203, 215 (Bankr.N.D.Ill.1993); *Katahn Assocs., Inc. v. Wien (In re Wien),* 155 B.R. 479, 488 (Bankr.N.D.Ill.1993).

What constitutes "false pretenses" in the context of § 523(a)(2)(A) has been defined as "implied misrepresentations or conduct intended to create and foster a false impression." *Bryson,* 187 B.R. at 959 (quoting *Peterson v. Bozzano (In re Bozzano),* 173 B.R. 990, 993 (Bankr.M.D.N.C. 1994)); *see also Itaparica, Ltd. v. Hargrove (In re Hargrove),* 164 B.R. 768, 772 (Bankr. N.D.Okla.1994). The court in *Evans v. Dunston (In re Dunston),* 117 B.R. 632 (Bankr. D.Colo.1990), *aff'd in part, rev'd in part,* 146 B.R. 269 (D.Colo.1992), further defined "false pretenses" as follows:

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debt-

or to transfer property or extend credit to the debtor. . . .

A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result of inadvertence.

117 B.R. at 641. False pretenses do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor. *Bozzano,* 173 B.R. at 993.

With respect to the third element, the Court will consider the evidence in light of the recently articulated "justifiable reliance" standard enunciated in *Field,* rather than the higher burden of "reasonable reliance" set forth in *Kimzey* or the "actual reliance in fact" standard espoused in *Mayer.* According to the majority opinion in *Field,* "justifiable reliance" is a lower burden to prove than "reasonable reliance" and "does not mean that [the objecting creditor's] conduct must conform to the standard of the reasonable man." ⸺ U.S. at ⸺, 116 S.Ct. at 444 (citation omitted).

The essence of Teresa's § 523(a)(2)(A) claim is that John defrauded her into becoming liable for both the S & S Investments and Kalkounos debts when they were incurred in 1992 and 1994 respectively, and also at the time of the Agreement when she agreed to assume responsibility to pay the S & S Investment debt if John would pay the Kalkounos debt by a subsequent date. Accordingly, the Court has considered the evidence adduced at trial and focused on John's actions and representations concerning those two debts at those respective times.

The first element is whether John obtained Teresa's agreement to become liable on those debts and their allocation at the time of the dissolution through representations either

knowingly false or made with such reckless disregard for the truth so as to constitute willful misrepresentation. With regard to the S & S Investments debt, Teresa testified that she would not have agreed to cosign that note and secure it with an encumbrance on her home if she had known that John's first marriage had not been finally dissolved in Greece. The Court finds her testimony credible that she was asked by John, as his wife, to obligate herself. In the trust deed securing that note, John represented not just to Teresa that he was her husband, but also to the trustee under the instrument—Chicago Title & Trust Company. The trust deed was duly recorded and was also constructively noticed to the public at large. It is flatly incredible to the Court that John, having been married to his first spouse since 1973, would not know the status of that marriage before proposing marriage to Teresa in 1991, and subsequently inducing her to cosign the S & S Investments debt in July 1992. John's actions created a false and misleading set of circumstances. Moreover, John's representations to Teresa that he was her husband were either knowingly false or so recklessly made as to constitute willful misrepresentation.[3]

By the time the Kalkounos debt was incurred in February 1994, John's dissolution from his former spouse had been finalized and Teresa obviously had forgiven his past actions and misrepresentations or she would not have obligated herself on that note and encumbered her home with yet another junior mortgage. See Plaintiff's Exhibit No. 24. She testified that she did so to save their already strained marriage. Further, she testified that John expressly told her the debt would be repaid within a matter of days upon receipt of earned, but unpaid, commissions or other compensation to which he was entitled. John admitted these representations, but claimed that the expected earnings were never received to satisfy the debt. The Court finds it incredible for John to reasonably believe he could have paid a debt of over $21,500.00 in early 1994, when his own evidence of earned income for 1993 was a W-2

wage and tax statement showing only $22,917.98 in gross income, and another for 1994 showing only $13,666.66. See Defendant's Exhibit No. 4. There is no credible evidence to support John's contention that he reasonably could have expected to repay the Kalkounos debt within a matter of days after the loan papers were signed. Once again, the Court finds his representations on this debt to have been knowingly false or so recklessly made as to constitute willful misrepresentation.

By the time the parties entered into the Agreement in November 1994, the employment and financial positions of the parties were reversed from that at the time of trial. In late 1994, Teresa had a relatively low paying position (Plaintiff's Exhibit Nos. 4 and 6) compared to John's situation (Plaintiff's Exhibit Nos. 9 and 10), which improved until he lost his job in October 1995 (Plaintiff's Exhibit No. 11). Their relative positions prompted the resultant Agreement under which Teresa agreed to pay the S & S Investments debt if John agreed to pay the Kalkounos debt by or before January 16, 1995. John paid neither debt. Rather, he filed his bankruptcy petition on January 13, 1995.

Teresa's testified that John misrepresented his income, assets, and true financial situation to induce her to consent to the terms of the Agreement regarding the debts. John flatly denied this. Teresa's version is buttressed by the testimony of Donna Little, a former lover and claimed creditor of John. Her testimony was unreservedly biased against him. Ms. Little testified that John admitted to her that he obtained Teresa's credit and collateral for the debts and that he was not going to pay anything on them, but, instead, was going to file bankruptcy. This evidence, although biased, tends to corroborate Teresa's version of the events and supports the claim that John made false representations to Teresa during the dissolution negotiations in order to secure her agreement with respect to the debts and other matters reflected in the Agreement. Consid-

---

**3.** The dispute as to what the proceeds of that debt were used for is of no consequence in light of the undisputed documentation of the loan papers both parties signed. See Plaintiff's Exhibit 23.

ering the totality of the evidence, the Court holds that Teresa has established the first element.

Although hotly contested, the Court also holds that Teresa has proven, by a preponderance of the credible evidence, that John possessed the requisite fraudulent scienter at all times when the debts were incurred and the Agreement regarding the debts was entered into. *See Standard Bank & Trust Co. v. Iaquinta (In re Iaquinta)*, 95 B.R. 576, 578 (Bankr.N.D.Ill.1989) (subsequent fraud or misrepresentation by the debtor is irrelevant). The Court has had the benefit of both parties' testimony, both on direct and very heated cross examination. After careful reflection on their demeanor and supporting documentary evidence, the Court finds Teresa's testimony and version of the events to be credible, her strong and hostile feelings toward John notwithstanding, but not John's testimony and version of the matter. Moreover, Teresa's testimony on the scienter element was corroborated by that of Ms. Little, notwithstanding her bias against John.[4]

Lastly, the Court finds that Teresa's reliance on John's representations was justifiable under all the facts and circumstances. This element was not disputed. Moreover, the damages incurred by Teresa when John did not pay the debts are reflected in the closing statement for the sale of Teresa's home, out of which the debts were paid from the sale proceeds. *See* Plaintiff's Exhibit No. 7. Accordingly, Teresa has proven her cause of action based on § 523(a)(2)(A) and judgment should be entered in her favor on Count III.

## IV. *CONCLUSION*

For the foregoing reasons, the Court holds that the debts are nondischargeable under § 523(a)(2)(A), but are dischargeable under §§ 523(a)(5) and 523(a)(15). Accordingly, judgment is entered in favor of Teresa on

Count III and in favor of John on Counts I and II of the complaint.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 29th day of April, 1996, the Court holds that the debts owed by the Debtor to Teresa J. Sterna are dischargeable under 11 U.S.C. §§ 523(a)(5) and 523(a)(15), but are nondischargeable under 11 U.S.C. § 523(a)(2)(A). Accordingly, judgment will be entered in favor of Teresa J. Sterna on Count III, and in favor of the Debtor on Counts I and II of the complaint.

---

4. On some of the conflicting testimonial details, the Court was compelled to determine whether to believe Teresa or John. In the final analysis, the Court believes that Teresa was telling the truth. This result avoids a trenchant observation made in another case involving other issues: "The Bankruptcy Code as liberalized in 1978 is widely criticized ... as a tool by which bounders defraud their spouses." *Farrey v. Sanderfoot (In re Sanderfoot)*, 899 F.2d 598, 606 (7th Cir.1990), *cert. granted*, 498 U.S. 980, 111 S.Ct. 507, 112 L.Ed.2d 519 *rev'd*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).