**In re Dale GATLIFF, Debtor.**

**Susan Gatliff, Plaintiff,**

**v.**

**Dale Gatliff, Defendant.**

**Nos. 99 B 18109, 99 A 01198.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 13, 2000.

---

Charles E. Antonietti, Antonietti and Associates, Calumet City, IL, for plaintiff.

Samuel A. Shelist, Edward L. Schuller & Associates, Chicago, IL, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER,
Bankruptcy Judge

Following trial held on Susan Gatliff's ("Plaintiff") complaint to · determine the dischargeability of three debts owed to her by her ex-husband Dale Gatliff ("Defendant" or "Debtor") pursuant to their di-vorce decree, the following Findings of Fact and Conclusions of Law are made and entered. Pursuant thereto, reim-bursement for the high school tuition of the parties' children owed to Plaintiff by Defendant/debtor will by separate judg-ment be held nondischargeable under 11 U.S.C § 523(a)(5), and her attorney's fees and the pro rata share of Debtor's tax refund each owed by him to her will be held nondischargeable under 11 U.S.C. § 523(a)(15)(A) and (B).

### FINDINGS OF FACT

Defendant filed a Petition for Dissolu-tion of Marriage from Plaintiff in the Cir-cuit Court of Cook County, Illinois, Case No. 96 D 15119. The parties entered into a Custody and Parenting Order with re-gards to their two children who were both under the age of 18 when their marriage was dissolved. The parties also entered into a Marital Settlement Agreement which was incorporated into the Judgment for Dissolution of Marriage (jointly "Di-vorce Decree") entered by the Circuit Court of Cook County on March 8, 1999.

The Divorce Decree provided in perti-nent part:

**Article II:** The Husband shall pay to the Wife's attorney, Charles E. Anto-nietti, the sum of Five Thousand ($5,000.00) dollars towards the attor-ney's fees incurred on behalf of the Wife. This amount shall be paid upon the entry of this Judgment for Dissolu-tion of Marriage.

\* \* \*

**Article VII:** The parties hereby ac-knowledge that from the beginning of these proceedings until the start of the 1998/1999 school year, both the minor children were attending high school at Bishop Noll Institute. The parties fur-ther acknowledge that the Wife made all

tuition payments at Bishop Noll Institute from the beginning of these proceedings through the 1997/1998 school year. The parties hereby agree that upon the effective date of this Agreement, the Husband shall pay to the Wife the sum of Two Thousand ($2,000.00) Dollars towards the past tuition of the parties' minor children.

\* \* \*

**Article XI:** The parties hereby acknowledge that the Husband has already filed his 1998 Federal and State Income Tax Returns and has claimed both minor children as dependency exemptions. The parties agree that any refund or tax liability incurred by the Husband shall be shared equally by the parties, with each party's share being payable by April 15, 1999.

Debtor failed to perform fully his obligations under the provisions. He only paid a portion of Plaintiff's attorney's fees and still owes $3,650; he failed to pay Plaintiff $2,000 due toward past tuition for the parties' then minor children; and he failed to pay Plaintiff her pro rata share of the tax refund in the sum of $3,000. The foregoing debts owed to Plaintiff total $8,650.

Plaintiff contends that all the foregoing obligations were in the nature of support, and are nondischargeable under § 523(a)(5). When the parties entered into the Marital Settlement Agreement and their marriage was dissolved, there was a considerable disparity in their income. Plaintiff then earned approximately $24,000 per year while Debtor as a policeman earned about $43,000. Notwithstanding this disparity, Plaintiff waived maintenance in exchange for the Debtor agreeing to pay certain debts. As such Plaintiff contends that payment of the debts was intended as a form of support for herself and their children. She argues that reimbursement of the children's tuition was a form of child support and nondischargeable under § 523(a)(5), and also contends that the majority of attorney's fees and costs incurred in the divorce proceeding were related to custody proceedings and as such were also in the nature of child support.

Alternatively, Plaintiff contends that these debts are nondischargeable under § 523(a)(15)(A) and (B) because Debtor has the ability to pay and also because the benefit to Debtor of having the debt discharged does not outweigh the detriment that she would suffer if the burden is shifted to her to pay the financial obligations.

Debtor contends that the debts are not in the nature of support under § 523(a)(5), and he testified that it was not the parties' intent at the time of the Divorce Decree that these debts be considered support. As for the attorney's fees, Debtor asserts that the fees were not used for the support of the Plaintiff or their minor children but rather for the prosecution of the divorce case and for property division. Debtor argues that all of the debts were a property settlement and therefore must be considered only under § 523(a)(15). Debtor argues as to § 523(a)(15)(A) that he falls under one of the exceptions to nondischargeability because he does not have the ability to pay the debts.

Testimony concerning assets of the parties was elicited during trial from which the following is found:

Susan Gatliff received the family home in the divorce. The home is worth approximately $105,000 with $22,000 remaining on the mortgage. Thus, there is about $83,000 in equity in the home. Debtor retained his pension with the Policemen's Annuity and Benefit Fund City of Chicago

and his deferred compensation benefits with the City of Chicago. Debtor's pension account contains over $72,000 in contributions and his deferred compensation plan had a value of approximately $10,300 as of March 1998.

On the date of the filing for bankruptcy and at the time of this trial, Debtor was employed full-time by the City of Chicago as a police officer. He has a gross income of $52,000 earning approximately $4,600 per month. On the date of the bankruptcy filing and at the time of trial, Plaintiff was employed full-time by Voss Equipment with a gross income of $26,000 earning approximately $2,200 per month.

Debtor has testified that while there is currently a disparity in the parties' income, he plans to retire soon and will then earn only between $25,000 and $30,000 per year. In fact, Debtor testified that he has already submitted his retirement papers to his supervisor. However, evidence did not show that any event or need compels his retirement and it is found that any retirement on his part, if indeed he goes through with it, will be entirely voluntary on his part.

In addition to owning her home, Plaintiff has several bank accounts both on her own and in conjunction with relatives. However, balances on those accounts at the end of each month are nominal because she lives from paycheck to paycheck.

The Debtor does not own his home and he leases his car.

Fact statements contained in the Conclusions of Law will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

#### Nondischargeability under §§ 523(a)(5) and (a)(15)(A) and (B)

In pertinent part, §§ 523(a)(5) and (a)(15) provide:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement. . . .

\* \* \*

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. §§ 523(a)(5) and (a)(15)(A)(B).

■ Exceptions from discharge under § 523, are generally construed strictly against the objecting creditor and liberally in favor of the debtor in order to further the policy of providing the debtor with a fresh start. *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972–73 (7th Cir.

1998). Consequently, the party alleging that a debt is nondischargeable bears the burden of proving the nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "The policy of protecting and favoring the debtor is tempered, however, when the debt arises from a divorce or separation agreement." *In re Crosswhite,* 148 F.3d 879, 883 (7th Cir.1998).

▬▬ Marital debt for alimony, maintenance or support of the debtor's spouse, former spouse or child is nondischargeable. § 523(a)(5). Any marital debt resulting from a division of marital assets may be nondischargeable under § 523(a)(15) provided the debtor does not fall within one of the two exceptions to nondischargeability. § 523(a)(15)(A) and (B). *Crosswhite,* 148 F.3d at 882.

▬▬ The former spouse bears the initial burden of proving that she holds a § 523(a)(15) claim against the debtor. *Id.* To satisfy that burden the spouse must establish that she is owed a debt other than the type listed under § 523(a)(5) and that it was awarded in connection with a divorce decree. *Id.* Once that showing is established, the burden rests with the debtor to prove that he falls under protection of one of the two exceptions to nondischargeability, either under subsection (A) the "ability to pay" test, or under subsection (B) the "detriment" test. *Id.*

### Analysis under § 523(a)(5)

▬▬ A determination of whether a debt is in the nature of alimony, maintenance or support under § 523(a)(5) is a question of federal bankruptcy law rather than state law. *Reines,* 142 F.3d at 972. Many courts consider various factors such as the following in making their determination of whether an obligation constitutes alimony, maintenance or support under § 523(a)(5):

(1) whether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support);

(2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support);

(3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support);

(4) the characterization of the obligation in the decree (obligations described as support indicate the obligation was for support);

(5) the placement of the obligation in the decree (obligations under the heading support indicate the obligation was for support);

(6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support);

(7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support);

(8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support); and

(9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support).

*Sterna v. Paneras (In re Paneras),* 195 B.R. 395, 401 (Bankr.N.D.Ill.1996).

▬▬ The foregoing factors have been considered here. There is no mention in the Divorce Decree that Debtor's obligations with respect to the subject debts

were to terminate upon Plaintiff's death or remarriage. The debts were to have been paid upon the effective date of the Divorce Decree. The Divorce Decree does not indicate whether the allocation of the debts was to balance the parties' respective incomes. The debts in issue were characterized and placed under various Articles of the Divorce Decree (Attorney Fees in Article II, Educational Expenses in Article VII, and Income Tax Returns in Article XI) and were not placed in Article I titled Maintenance nor in Article III titled Custody, Child Support, Visitation. The parties have two children from their marriage who are now over 18 but were minors at the time of the divorce. The debts were not referenced in the Divorce Decree as being taxable to Plaintiff. There was a disparity in the parties' income at the time of the divorce with Plaintiff earning $24,000 and Debtor earning $43,000.

Although Plaintiff argues that the majority of the attorney's fees owed were incurred in relation to child custody, there is nothing in the attorney's billing records to delineate between time spent on child custody or property settlement. An analysis of the factors considered and weight of the evidence supports a determination that the attorney's fees and the tax return proceeds in issue were not intended to be in the nature of support for the Plaintiff under § 523(a)(5), and therefore they must be considered under § 523(a)(15).

 While the foregoing discussion is helpful in determining whether Debtor's obligation to pay Plaintiff's attorney's fees and a share of the tax refund constituted child support, it does not help determine whether an obligation for reimbursement of tuition was intended to constitute child support. See *Seixas v. Booth (In re Seixas)*, 239 B.R. 398 (9th Cir. BAP 1999); *Shevick v. Brodsky (In re Brodsky)*, 239 B.R. 365 (Bankr.N.D.Ill.1999). Although tuition reimbursement in issue here was not placed in Article III titled Custody, Child Support, Visitation, a bankruptcy judge is not required to accept the label used by the parties. One must look beyond the Divorce Decree's characterization of the nature of the obligation and determine whether the divorce court and parties intended to provide support or to divide marital property and debts. *Maitlen v. Maitlen (In re Maitlen)*, 658 F.2d 466, 468 (7th Cir.1981).

 The minor children of these parties attended a private high school, Bishop Noll. Debtor testified that he did not want his children to attend the private high school and had told Plaintiff that he could not afford it. Nevertheless, the Divorce Decree agreed to by him indicated that the children attended Bishop Noll and both were attending when the divorce proceedings commenced. Debtor agreed, pursuant to the Divorce Decree, to reimburse Plaintiff for the children's tuition because Plaintiff had made all the payments for the children's high school education. It is too late now to change that agreement or to change his intent on entering into it. The cost of educating children of a marriage are in the nature of child support. See, e.g., *Draper v. Draper*, 790 F.2d 52 (8th Cir.1986) (the obligation to pay children's private school tuition is in the nature of support); *In re Harrell*, 754 F.2d 902 (11th Cir.1985) (the obligation to pay child's costs of attending college after age of majority is in the nature of support, though state law would not have required the payment of such expenses); *Kilgore v. Fritz (In re Fritz)*, 227 B.R. 700 (Bankr. S.D.Ind.1997) (the obligation to pay children's private school tuition is in the nature of support); *In re Kaylo*, 183 B.R. 557 (Bankr.W.D.Ark.1995) (the obligation to pay children's private school tuition is in the nature of support).

Accordingly, the debt for tuition reimbursement was and is in the nature of support within the purview of § 523(a)(5) and is therefore nondischargeable. The other debts, the attorney's fees and Plaintiff's share of the tax return, fall within the purview of § 523(a)(15), and it becomes necessary to consider whether Defendant/debtor does or does not have ability to pay the debt, or whether benefit to him of discharge of these debts would outweigh the detriment to Plaintiff if those debts are discharged.

### Analysis under § 523(a)(15)

1. *Ability to Pay Test*

■■■■ Debtor clearly has the ability to pay. Debtor's 1999 W 2 income form indicates that he earned about $52,000 that year before withholding. Debtor's Schedule I (Current Income of Individual) filed with his bankruptcy petition showed that he earns $4,623 a month. After contributing to his pension, his net monthly income is $2,488. In Debtor's Schedule J (Current Expenditures of Individual Debtor), Debtor listed his total monthly expenses as $2,966. The difference leaves Debtor short $478 every month. However, Debtor's current expenditures were reduced by $740 as of August 2000 because he no longer was required to pay any monthly child support. Accordingly, his monthly expenses now (and at the time of trial) total only $2,266, leaving him a positive net cash flow of $262 every month which can be used to pay his debts.

As earlier noted, Debtor testified that he was retiring and as a result his income will be reduced to $2,964 per month. However, he has voluntarily chosen to retire (if indeed he goes through with that intent). His retirement is not due to any health problems. He has simply tired of being a police officer. While the stress of defending the public as a street officer is real, Debtor cannot use the fact that he has chosen to retire, thereby voluntarily reducing his income, as a justification for a determination that he is unable to pay his debt to his spouse and children. Debtor is only 51 years of age and says he does not intend to obtain other employment. His planned reduction in income would therefore be self-imposed. *Humiston v. Huddelston (In re Huddelston)*, 194 B.R. 681, 690 (Bankr.N.D.Ga.1996) (where debtor's inability to pay marital debt was due to his voluntary underemployment and his failure to pursue more lucrative opportunities, it was not a basis for discharging of debt). Moreover, his current desk assignment is less stressful than in former years when he walked a beat, making his plans to retire about the time he must confront this action appear contrived, and not persuasive. Debtor does have the ability to pay the debts in question over time.

2. *Benefit/Detriment Test*

■■■■ In analyzing nondischargeability on grounds that benefit to Debtor is greater than the detriment to his ex-wife of having the debt discharged, a "totality of the circumstances" test is the general method used for weighing benefit and detriment. *Crosswhite*, 148 F.3d at 888. Bankruptcy Courts have considered various factors in the totality of the circumstances test: (1) the income and expenses of the parties; (2) the nature of the debt; (3) the former spouse's ability to pay; and (4) the number of dependents. *In re Rossi*, 1999 WL 253124, at *6 (Bankr.N.D.Ill. 1999).

■■■ Debtor argues that Plaintiff is better able to shoulder the debt because she received the home in the divorce. Plaintiff did indeed receive her home through the divorce, and she has about $83,000 in home equity. However, Debtor retained his pension fund in the divorce,

and as of December 31, 1999, he has about $72,000 of contributions in that fund. Plaintiff has a retirement program under § 401(k) of the Internal Revenue Code which holds about $5,000 to $6,000, but Debtor also has approximately $10,300 as of March 1998 in his deferred compensation account. Plaintiff is 50 years of age and testified she will have to work at least until the age of 65. Debtor, on the other hand, is 51 years of age and he does not intend on obtaining other employment after he retires from the police force.

Most important, Debtor has the greater earning potential. Debtor earned more than Plaintiff at the time of the divorce and at the time of trial earned about twice her salary.

Debtor has the burden to show that one of the exceptions applies and Debtor has not met his burden of showing by preponderance of the evidence that the benefit to him of having the debt discharged will outweigh the detriment to his former wife who earns half his salary.

### CONCLUSION

For the foregoing reasons, the tuition reimbursement for the minor children's high school education is in the nature of support and is nondischargeable under § 523(a)(5). The attorney's fees and the tax return reimbursement are not in the nature of support but rather are in the nature of a property settlement under § 523(a)(15) and are nondischargeable under § 523(a)(15)(A) and (B).