**In re Steve COOPER, Debtor.**

**Karen Chudy, Plaintiff,**

**v.**

**Steve Cooper, Defendant.**

**Bankruptcy No. 94–50423.
Adversary No. 94–5109.**

United States Bankruptcy Court,
D. Connecticut,
Bridgeport Division.

June 8, 2001.

Howard C. Eckenrode, Milford, Connecticut, for the plaintiff.

Timothy D. Miltenberger, Coan, Lewendon, Royston & Gulliver, New Haven, Connecticut, for the defendant.  ·

### MEMORANDUM AND ORDER ON DISCHARGEABILITY OF DEBT

ALAN H.W. SHIFF, Chief Judge.

The plaintiff commenced this adversary proceeding for a determination that a debt described in a Connecticut Superior Court

divorce decree as "lump sum alimony" is nondischargeable. For the reasons that follow, judgment shall enter in favor of the plaintiff.

## DISCUSSION

On July 26, ·1993, the Superior Court of Connecticut at Milford issued a divorce decree which, *inter alia*, created a debt owed by the defendant/debtor to the plaintiff in the amount of $75,000 ("subject debt") which the court characterized as "lump sum alimony." On February 16, 1994, the defendant filed a bankruptcy petition in this court under chapter 13. On March 15, 1994, he converted the case to Chapter 7, *see* § 1307(a). On April 21, 1994, he disclosed the subject debt as secured on Schedule D and the same debt as unsecured, albeit in a disputed amount, on Schedule F.[1] On May 24, 1994, the plaintiff commenced this adversary proceeding for a determination that the subject debt is nondischargeable under 11 U.S.C. § 523(a)(5).[2]

■ Alimony awarded to a spouse in a divorce decree is nondischargeable only to the extent it is in fact intended for the support of that party. *Brody v. Brody*, 3 F.3d 35, 38 (2nd Cir.1993); *See also, Cook v. Bieluch, (In re Bieluch)*, 219 B.R. 14, 20 (Bankr.D.Conn.1998), *aff'd*, 216 F.3d 1071 (2nd Cir. July 5, 2000); *Tavella v. Edwards (In re Edwards)*, 172 B.R. 505, 513

(Bankr. D. CT 1994). The labels used in a state court divorce decree to describe a debt are entitled to considerable weight but are not dispositive on the issue of whether such a debt is dischargeable. The text of § 523(a)(5) as well as Second Circuit precedent direct bankruptcy courts to scrutinize with care the language of a state court divorce decree to determine what was intended. *In re Edwards, id.,* 172 B.R. at 508 (the task of the bankruptcy court is "to determine whether the state court intended to create a debt that was actually in the nature of alimony, i.e., necessary for the plaintiff's support.").

The state court ordered the defendant to pay the plaintiff's housing expenses, including "utilities, the mortgage and taxes," for the marital residence until the residence was sold and then pay her the subject debt. *July 26, 1993 Order* at 6. The issue here is whether that order was intended for her support or a division of their property.

■ On July 27, 2000, this court reached the preliminary conclusion that arguably the subject debt could be interpreted as either a support award or a property division. The parties were directed to produce the state court record, to determine whether it clarified the intent of the trial court. It was further concluded that if the intent was still ambiguous,[3] the

---

1. Although the defendant's Schedule D, identified the subject debt as secured, the plaintiff's adversary proceeding necessarily treats that debt as unsecured.

2. The plaintiff was granted a discharge of his nondischargeable debts on September 13, 1994. There have been numerous procedural matters which have delayed resolution of this matter, including the entry of judgment in favor of the plaintiff on June 25, 1997 which was vacated on May 12, 1998.

3. The defendant sought to expand that record by adding post-divorce evidence that the state

court did not address. The request was denied for the reason that, absent a showing of manifest injustice, *see, e.g., United States v. McVeigh*, 2001 WL 611163 (D.Colo.2001), *aff'd,* 2001 WL 619765 (10th Cir.Colo.2001), which is not applicable here, an analysis of what the state court intended must necessarily be limited to the evidence which formed the predicate for its decision. A broader inquiry would invite this court to consider whether the state court's decree should be implemented rather than determine what the state court decided. *See, e.g., Forsdick v. Turgeon,* 812 F.2d 801, 803 (2nd. Cir.1987)

matter would be referred back to the state court for resolution.[4] A further proceeding is unnecessary, however, because it is apparent from the record that the trial court intended the subject debt as support for the plaintiff.

■ Although, as noted, *supra* text at 2, a label used by the state court is not dispositive, the use of the word "alimony" by a Connecticut court is nonetheless significant evidence that such the award was intended to provide support for the recipient. Conn.Gen.Stats. § 46b–82. *In re Edwards, supra,* 172 B.R. 505, 513 (Bankr. D. CT 1994). *See also Passamano v. Passamano,* 228 Conn. 85, 91, 634 A.2d 891 (1993); *Thomas v. Thomas,* 159 Conn. 477, 271 A.2d 62 (1970). That aside, an analysis of the relevant factors for a determination of dischargeability warrants the same conclusion. Those factors include "the context in which the debt appears in the decree, ... [and] whether an assumption of debt has the effect of providing support necessary to insure a home for the spouse....". *Edwards, id.,* 172 B.R. at 513.

The defendant argues that the subject debt is dischargeable because its amount was contingent on the value of the marital residence or other real property and because of its lump sum, unmodifiable character. The defendant also relies on the language in the decree that the subject debt was created "in a small way ...

reimburse [the plaintiff] for the education [that the defendant] promised her and then took away because it was in his economic benefit to do so," *Id.* at 5, for the argument that the subject debt should be interpreted as creating a dischargeable property division or a punitive award. *See defendant's September 14, 2000 memorandum of law* at 7. Those arguments are unpersuasive.

Apart from the fact that the state court made no finding as to the independent value of the marital residence, the subject debt's "lump sum" designation is not dispositive with respect to a dischargeability determination. *See e.g. Sterna v. Paneras (In re Paneras),* 195 B.R. 395, 401 (Bankr. N.D.Ill.1996), *cited in In re Gatliff,* —— B.R. ——, 2000 WL 1836726 at *4 (Bankr. N.D.Ill. Dec. 13, 2000). *See also Drennan v. Drennan (In re Drennan),* 161 B.R. 661, 666 (Bankr.E.D.Ark.1993) (debtor-husband's lump sum obligation under marital settlement agreement to surrender one half of cash value of his insurance policy to wife was held to be nondischargeable support where ex-wife "could not afford, at the time of the divorce, to find an alternative residence without those funds."); *Hill v. Hale (In re Hill)* 133 B.R. 126, 137 (Bankr.N.D.Ind.1989) (debtor-husband's divorce decree obligation to pay off mortgage on marital residence where wife continued to reside constituted nondischargeable support obligation); *Robbins v. Mizen*

("there is no warrant for a federal bankruptcy court to evaluate the state court's alimony award against the needs of the former spouse to whom it was granted."). Because the state court has expertise in domestic relations matters, that is the appropriate forum to address any additional evidence that a party may wish to introduce. *See Spong, supra,* 661 F.2d at 8 (2nd Cir.1981) ("United States courts have no jurisdiction over divorce or alimony allowances."). *See also In re Calhoun,* 715 F.2d 1103 (6th Cir.1983) ("We believe that the initial inquiry must be to ascertain whether

the state court or the parties to the divorce intended to create an obligation to provide support through the assumption of the joint debts. If they did not, the inquiry ends there. There is no basis for the bankruptcy court to create a nondischargeable obligation for the debtor that the state court granting the divorce decree or the parties to that proceeding did not create.").

4. The state trial referee who presided over the divorce case has since died.

*(In re Mizen)*, 72 B.R. 251, 253 ("Prior decisions have consistently recognized that a significant part of the duty that is owed by a debtor to his or her former family is the provision of an adequate place to live."), *citing In re Conrad*, 33 B.R. 601, 603 (Bankr. N.D. OH 1983) and *In re Voss*, 20 B.R. 598 (Bankr. N.D. IA 1982).

The subject debt appears in the divorce decree immediately following a discussion of child support awarded to the plaintiff in the amount of $135 per week and periodic alimony in the amount of $150 per week, which would terminable upon her death, remarriage or cohabitation as prescribed by Connecticut General Statutes. *July 26, 1993 Order*, at 4. As noted, the court found that the plaintiff was entitled to "occupancy at . . . [their marital home] . . . until either the sale of said property or the payment [by him to her] of [the subject debt] . . . ." *Id.* at 6. The order further stated that "[d]uring the occupancy of said premises, [the defendant] will continue to make all payments with regard to utilities, . . . mortgage and taxes, and the defendant shall not be required to pay for any use or occupancy to the plaintiff." The court is persuaded that obligation to pay the plaintiff's occupancy expenses was intended for her support and maintenance. Therefore, since it is apparent that the subject debt was intended to replace that support obligation, the subject debt was also intended for the plaintiff's support.

Accordingly, the subject debt is excepted from discharge, and

IT SO ORDERED.