**In re Edward T. McGUNN, Debtor.**

**Patricia Johnson–McGunn, Plaintiff,**

**v.**

**Edward T. McGunn, Defendant.**

**Bankruptcy No. 00 B 36441.**
**Adversary No. 02 A 00025.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 31, 2002.

John H. Redfield, Esq., Ariel Weissberg, Esq., Weissberg and Associates, Ltd., Chicago, IL, for Plaintiff.

Kenneth A. Fedinets, Esq., Gesas, Pilati, Gesas and Golin, Ltd., Chicago, IL, for Defendant.

## *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by Patricia Johnson–McGunn ("Patricia") against the Debtor, Edward T. McGunn ("Edward"), to determine the dischargeability of a debt he owes Patricia under 11 U.S.C. §§ 523(a)(5) and 523(a)(15). For the reasons set forth herein, the Court finds the debt non-dischargeable maintenance under 11 U.S.C.

§ 523(a)(5), and not property settlement for purposes of 11 U.S.C. § 523(a)(15).

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

Many of the facts are undisputed. On October 14, 1983, Edward and Patricia were married. Four children were born to the parties during their marriage. At the time of the marriage, Edward owned 100% of the safe business known as McGunn Safe Company, Inc. ("McGunn Safe"). In 1988, Edward gave Patricia a 50% interest in McGunn Safe.

On March 2, 2000, the marriage was dissolved pursuant to a Judgment of Dissolution of Marriage (the "Judgment of Dissolution") entered in the Circuit Court of Cook County, Illinois (the "State Court"). *See* Patricia's Exhibit No. 2 and Edward's Exhibit No. 1. The Judgment of Dissolution incorporated a Marital Settlement Agreement (the "Agreement") regarding, inter alia, maintenance, the rights of each party in and to certain property, the debts of the parties, and their obligations for attorneys' fees incurred in the dissolution proceeding. *Id.*

Article IV of the Agreement, captioned "MAINTENANCE" contained the following relevant provision:

4.1 *Maintenance for PATRICIA:* ED-WARD shall pay to PATRICIA the sum of $385,000 as lump-sum and non-modifiable maintenance. Such lump-sum shall be paid in monthly installments of $1,750 for March 1 through December 31, 2000, and thereafter, in equal monthly installments of $3,828.13 for 96 months until the entire sum of $385,000 has been paid. Each of these payment [sic] shall be tendered to PATRICIA on the fifteenth of each month. EDWARD's obligation shall terminate on the first to occur of PATRICIA's death or EDWARD's payment of the lump-sum in full, which he may prepay. These payments are not terminable upon PATRICIA's cohabitation or remarriage. EDWARD's obligation shall survive his death and be a charge against his estate to the extent of any unpaid obligation outstanding at the time of his death and to the extent that the insurance proceeds, as provided in Article VII herein are insufficient to satisfy this obligation. . . .

*See* Patricia's Exhibit No. 2 and Edward's Exhibit No. 1, Article IV at p. 8.

Although the total amount of maintenance due Patricia was non-modifiable, the payment schedule would accelerate if Edward's annual income exceeded $300,000.00 or it would extend and decelerate if Edward's annual income was less than $180,000.00. *Id.* at pp. 9–10. Furthermore, the non-modifiable lump sum maintenance payment would accelerate with the sale of McGunn Safe, Edward's acquisition of an additional business or Edward's death. *Id.* at p. 9 and 10. For income tax purposes, the parties agreed that the $385,000.00 would be deducted by Edward and included as income to Patricia. *Id.* at ¶ 4.2, p. 11. Patricia waived maintenance from Edward except for the $385,000.00 payment. *Id.* at ¶ 4.4, p. 12. Edward has failed to perform his obligations under Article 4.1 of the Agreement, except for payments totaling $3,000.00 to Patricia. The Agreement also provided for the division

of property between the parties. *Id.* at Article IX*, pp. 21–29. Moreover, the Agreement named Edward as the primary residential parent of the four children. *Id.* at Article II, ¶ 2.1 p. 7. On December 21, 2000, the State Court ordered that the four children were to reside with Patricia. *See* Patricia's Exhibit No. 3. Since that time, all children have resided with her, except for the parties' 18 year old son who moved out of Patricia's home in October 2001.

On December 13, 2000, Edward filed a Chapter 13 bankruptcy petition. *See* Patricia's Exhibit No. 5. Subsequently, on December 29, 2000, Edward filed his Schedules I and J, which reflected total monthly income of $3,200.00 and total monthly expenses of $2,787.00, with an excess of $413.00 per month to fund his Chapter 13 plan. *See* Patricia's Exhibit No. 6 and Edward's Exhibit No. 9. On March 2, 2001, after confirmation of Edward's plan was denied, the case was converted to Chapter 7. Thereafter, on May 11, 2001, Edward filed amended Schedules I and J, which reflected total monthly income of $1,650.00 and monthly expenses of $1,887.00, or a monthly income deficit of $237.00. *See* Patricia's Exhibit No. 9 and Edward's Exhibit No. 9.

On January 9, 2002, Patricia filed the instant two-count complaint to determine dischargeability of the $385,000.00 debt owed by Edward to her under 11 U.S.C. §§ 523(a)(5) and 523(a)(15). *See* Patricia's Exhibit No. 1. Pursuant to Count I of the complaint, Patricia seeks the entry of an order declaring Edward's obligation as set forth in the Agreement and the Judgment of Dissolution to pay to Patricia the sum of $385,000.00 as lump sum and non-modifiable maintenance, less the sum of $3,000.00 received from Edward, to be non-dischargeable under § 523(a)(5). Under Count II of the complaint, Patricia alternatively seeks the entry of an order declar-

ing the debt non-dischargeable under § 523(a)(15). Edward filed an answer to the complaint on March 12, 2002, denying the substantive allegations. *See* Patricia's Exhibit No. 12.

The Court held an evidentiary hearing in this matter. Edward moved for a directed finding pursuant to Federal Rule of Civil Procedure 52 and its bankruptcy analog Federal Rule of Bankruptcy Procedure 7052. Pursuant to Bankruptcy Rule 7052(c), the Court declined to render any judgment until the close of all the evidence. Thereafter, the Court took this matter under advisement and for the following reasons denies Edward's motion as to Count I, but grants it as to Count II. The Court concludes and holds that Article IV of the Agreement is in the nature of maintenance, not property settlement. Thus, Patricia wins under Count I, but must lose under Count II.

### III. THE DISCHARGEABILITY STANDARDS IN THE SEVENTH CIRCUIT

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Harasymiw,* 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re McFarland,* 84 F.3d 943, 946 (7th Cir.), *cert. denied,* 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scar-*

*lata,* 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985)). *Accord In re Reines,* 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied,* 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999). "The policy of protecting and favoring the debtor is tempered, however, when the debt arises from a divorce or separation agreement." *In re Crosswhite,* 148 F.3d 879, 881 (7th Cir. 1998) (citation omitted). The § 523(a)(5) exception from discharge is construed more liberally than other § 523 exceptions. *Id.* at 882.

## IV. *DISCUSSION*

### A. *11 U.S.C. § 523(a)(5)*

The principal focus of the parties' dispute is on Count I of the complaint. Patricia contends that Edward's obligation to pay the unpaid balance owed her is not dischargeable under § 523(a)(5). Section 523(a)(5) provides in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

> > (5) to a spouse, former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement. . . .

11 U.S.C. § 523(a)(5).

■ A debt owed to a former spouse or a debt to be paid to a third party in the nature of alimony, maintenance, or support pursuant to a divorce decree is non-dischargeable in bankruptcy under § 523(a)(5). *See In re Coil,* 680 F.2d 1170, 1171 (7th Cir.1982); *Maitlen v. Maitlen (In re Maitlen),* 658 F.2d 466, 468 (7th Cir.1981); *Bradaric v. Bradaric (In re Bradaric),* 142 B.R. 267, 269 (Bankr. N.D.Ill.1992). Obligations that arise as part of the division of marital property, however, are dischargeable under that section. *Coil,* 680 F.2d at 1171. "An award of maintenance and support is meant to provide an ex–spouse with necessary goods or services which he or she would otherwise not be able to purchase." *Calisoff v. Calisoff (In re Calisoff),* 92 B.R. 346, 352 (Bankr.N.D.Ill.1988) (citation omitted). Edward contends that Article IV of the Agreement is really in the nature of disguised property settlement despite the provisions thereof describing same to be non-modifiable lump sum maintenance for Patricia.

■ Section 523(a)(5) sets out three requirements that must be met in order for a debt to be non-dischargeable: (1) the underlying debt must be in the nature of alimony, maintenance, or support; (2) the debt must be owed to a former spouse or child; and (3) the debt must be incurred in connection with a separation agreement, divorce, or property settlement agreement or other order of a court of record. *Reines,* 142 F.3d at 972 (citing *Kinnally v. Fonnemann (In re Fonnemann),* 128 B.R. 214, 217 (Bankr.N.D.Ill.1991)); *Wawak v. Smolenski (In re Smolenski),* 210 B.R. 780, 782 (Bankr.N.D.Ill.1997). Patricia bears the burden of proving these elements by a preponderance of the evidence. *Crosswhite,* 148 F.3d at 881; *Reines,* 142 F.3d at 973.

Only the first of these three elements is in dispute. With respect to the second element—that the debt must be owed to a former spouse or child—the Court finds that this element has been satisfied because the Judgment of Dissolution, which contained the Agreement, provided for an award to Patricia. It is uncontested that the basis upon which Patricia relies to

collect her claim was entered pursuant to the Judgment of Dissolution, which is an order of the State Court in connection with the dissolution proceeding, so the third element is not disputed.

The determination of whether a debt is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law rather than state law. *Haas v. Haas (In re Haas)*, 129 B.R. 531, 536 (Bankr.N.D.Ill.1989); *Seidel v. Seidel (In re Seidel)*, 48 B.R. 371, 373 (Bankr. C.D.Ill.1984). In making this determination, the Court must look to the substance of the obligation and not to labels imposed by state law. *See Maitlen*, 658 F.2d at 468; *Doss, Puchalski, Keenan & Bargiel, Ltd. v. Cockhill (In re Cockhill)*, 72 B.R. 339, 341 (Bankr.N.D.Ill.1987). This is not to say, however, that state law is irrelevant. On the contrary, state law may in fact provide relevant guidance. *See Calisoff*, 92 B.R. at 352. Thus, "it is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance." *In re Woods*, 561 F.2d 27, 29 (7th Cir.1977) (citations omitted).

In determining whether a debt is in the nature of support or maintenance or whether it is properly characterized as a division of property, courts have considered the following factors:

(1) whether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support);

(2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support);

(3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support);

(4) the characterization of the obligation in the decree (obligations described as support indicate the obligation was for support);

(5) the placement of the obligation in the decree (obligations under the heading support indicate the obligation was for support);

(6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support);

(7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support);

(8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support);

(9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support); and

(10) waivers of maintenance.

*See Woods*, 561 F.2d at 29–30; *Maitlen*, 658 F.2d at 468–69; *Coil* 680 F.2d at 1172; *Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 401–02 (Bankr.N.D.Ill.1996); *Wright v. Wright (In re Wright)*, 184 B.R. 318, 321 (Bankr.N.D.Ill.1995); *Daulton v. Daulton (In re Daulton)*, 139 B.R. 708, 710 (Bankr.C.D.Ill.1992). The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts. *Wright*, 184 B.R. at 321; *Elkhatib v. Elkhatib (In re Elkhatib)*, 108 B.R. 650, 652 (Bankr.N.D.Ill.1989). The intent at that time is critical. The underlying question in this determination is whether the State Court and the parties intended to provide support or to divide marital property and debts. *See Paneras,*

195 B.R. at 401. "The effect and the function of the obligation is also an important criterion." *Id.*

Part of the problem in discerning whether an obligation is either alimony (or here, maintenance) rather than property settlement, derives from the fact that support obligations are almost always payable out of property in which both parties are usually asserting competing claims and seeking to acquire and divide. Thus, because the maintenance classification is usually created out of the substance of property, some blurring or lack of crystalline demarcation between the two frequently results, creating a fertile and thorny area for dispute and thereby adding more fodder to the litigation fields so ardently plowed by clients and their attorneys.

■ All of the foregoing *Woods* factors have been considered and these factors indicate that the debt is in the nature of non-dischargeable maintenance or support. These factors apply in favor of a determination that the $385,000.00 debt owed to Patricia from Edward was intended and agreed by them to be in the nature of maintenance for Patricia, and was not a part of the property settlement between Edward and Patricia. Most important is the clear and cogent language in the Agreement, which unequivocally states that "EDWARD shall pay to PATRICIA the sum of $385,000 as lump-sum and non-modifiable maintenance." *See* Patricia's Exhibit No. 2 and Edward's Exhibit No. 1, Article IV at p. 8. The Agreement further provides that the lump-sum shall be paid in monthly installments of $1,750.00 for March 1 through December 31, 2000, and thereafter, in equal monthly installments of $3,828.13 for 96 months until the entire sum has been paid. The debt, which is payable by Edward to Patricia over a period of 106 months indicates that the debt is for maintenance. Additionally, under the Agreement, Edward's obligation to pay the debt terminates on the first to occur of Patricia's death or Edward's payment of the lump-sum in full. The termination of the payment of the debt upon Patricia's death indicates that the debt is for maintenance.

Moreover, the payment schedule, which is modifiable after January 1, 2001, indicates that the debt is for maintenance. The provisions regarding the payment of the debt by Edward to Patricia appear in the Agreement under the heading entitled "Maintenance." The Agreement has a separate section entitled "Division of Property," in which various property is distributed to Edward and Patricia. The fact that the debt appears under the heading "Maintenance," rather than the section entitled "Division of Property," further indicates that the debt is for maintenance. Moreover, both Edward and Patricia waived maintenance except for the $385,000.00 payment provided to Patricia.

Furthermore, pursuant to the Agreement, Edward and Patricia contemplated and agreed that all payments by Edward to Patricia under Article IV of the Agreement would constitute alimony payments, which were to be received by Patricia under a divorce or separation instrument within the meaning of Sections 71 and 215 of the Internal Revenue Code. All such payments would be included in Patricia's gross income pursuant to Section 71 and would be deductible by Edward pursuant to Section 215 in determining the parties' taxable incomes. This likewise indicates that the debt is maintenance rather than property settlement.

When the Agreement and Judgment of Dissolution were entered on March 2, 2000, there was a substantial disparity in the incomes of Edward and Patricia. Patricia testified that the award of the debt was made in order to balance the incomes

of Patricia and Edward, thus indicative that the debt is for maintenance. During January 2000 through May 2000, Patricia was employed by Fox Associates, L.L.C. and received compensation for that period in the sum of $6,000.00. *See* Edward's Exhibit No. 3. Patricia testified that her annual salary at this company was $40,000.00. She testified that she intended that the subject debt was to supplement her much smaller income than Edward's income, and it was agreed and intended by the parties to aid in her support and maintenance.

Edward testified that on March 2, 2000, he was employed as the president of McGunn Safe. In response to one of Patricia's interrogatories, Edward stated in relevant part that "McGunn Safe was the employer of Edward until April 24, 2000, at the rate of $240,000.00 per year. Received a company car that cost the company approximately $7,000.00 per year and he received medical for his family having a value of about $7,000.00 per year." *See* Patricia's Exhibit No. 15, Interrogatory No. 4 at pp. 2–3.

■ Edward unpersuasively argues that the various drafts of the Agreement before the parties ultimately settled on the final draft demonstrate that the $385,000.00 obligation was always intended by the parties to be a division of property rather than maintenance as characterized in the Agreement. *See* Edward's Exhibit Nos. 13–17. Edward's State Court attorney testified that through the various iterations of the Agreement, Patricia's demand for $500,000.00 worth of interest in McGunn Safe was restructured so that part of that value was allocated as maintenance and part property settlement. The relevant terms changed to the final deal struck because, in part, of concern by Patricia's State Court attorney with a possible subsequent bankruptcy filing by Ed-

ward. Consequently, some of what had been discussed as part of property settlement was changed to the subject maintenance provision. Edward agreed because he was entitled to the income tax deduction for payments he would make as maintenance to Patricia. Edward testified that he did not care how the attorneys moved the numbers around. The Court will principally consider the final draft of the Agreement, which embodies the parties' intent. The prior drafts demonstrate the negotiation process, but the final draft culminates in the definitive terms and conditions agreed upon by the parties. The final Agreement is most indicative of the intent of the parties, not the prior drafts that were negotiated by the parties when they were still disputing various terms and conditions.

■ Additionally, the Court finds that the doctrine of judicial estoppel prevents Edward from now arguing that the remaining $382,000.00 debt he owes to Patricia constitutes dischargeable property settlement. The doctrine of judicial estoppel, also known as the doctrine of inconsistent positions, precludes a party from asserting a position in a subsequent legal proceeding inconsistent with a position taken by that party in the same or prior litigation. *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir.), *cert. denied*, 525 U.S. 981, 119 S.Ct. 444, 142 L.Ed.2d 398 (1998); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Kale v. Obuchowski*, 985 F.2d 360, 361 (7th Cir. 1993). It is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.), *cert. denied*, 506 U.S. 989, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992) (citation omitted).

■ The doctrine extends to inconsistent positions of law as well as fact. *Cassidy*, 892 F.2d at 642 ("[W]e think that the change of position on the legal question is every bit as harmful to the administration of justice as a change on an issue of fact."). The applicability of the doctrine rests with the Court's discretion and should not be used to work an injustice, such as where the party's former position was the product of inadvertence or mistake, or where there is only the appearance of inconsistency between two positions but both may be reconciled. *Id.*

■ Judicial estoppel is a flexible standard not reducible to a pat formula. *Levinson*, 969 F.2d at 264. The Seventh Circuit has set some boundaries for the application of judicial estoppel.

First, the later position must be clearly inconsistent with the earlier position. Also, the facts at issue should be the same in both cases. Finally, the party to be estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument.

*Id.* at 264–65 (citations omitted); *see also Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1999) (citing *Levinson*). As further observed in *Cassidy*, "an appellate court may raise [judicial] estoppel on its own motion in an appropriate case." 892 F.2d at 641 (citation omitted).

■ The Court opts to exercise its discretion to apply the doctrine in light of the clear terms of the Agreement and the parties' testimony before the State Court. Edward testified on March 28, 2000 before the State Court during the dissolution proceeding. He answered questions posed by his attorney who had advised him not to enter into the Agreement and the subject maintenance provision at issue here:

Q Pat is likewise waiving any rights to maintenance she may have from you except as for what is provided in the agreement?

A Yes.

Q The agreement for [sic] provides for you to pay the non-modifiable lump sum of $385,000.00, is that correct?

A That's correct.

. . .

Q [Edward], I have advised you not to enter into this agreement, have I not?

A Yes.

Q I have told you that if we were to proceed to trial and if the court were [to] consider the actual value of this business, you would not be under an obligation to make the lump sum maintenance payments called for by this agreement and the property payments called for by the agreement?

A That's correct.

Q Notwithstanding my advice, you persist and wish to enter into this agreement, is that correct?

A Yes.

*See* Edward's Exhibit No. 2 at p. 10 and 14. Additionally, Patricia testified before the State Court in relevant part:

Q Have you heard all of the questions asked and answered of your husband and the answers he has given just this morning?

A Yes, I have.

Q If you were asked substantially the same questions, would your answers be essentially the same as his?

A Yes, they would.

Q Specifically you understand the terms of maintenance provided in Article Four concerning a lump sum maintenance that is going to be paid to you over a little under nine years?

A Yes, I do.

. . .

Q Do you understand that you waive any right you may have to maintenance from Ed other than what is specifically provided in the agreement, is that correct?

A That is.

*Id.* at pp. 25 and 29–30.

Clearly, during this colloquy between Edward and his attorney, he acknowledged that the $385,000.00 payment to Patricia constituted maintenance and that he intended it as such. In his pleadings filed in this matter, however, Edward now contends that the $385,000.00 debt he owes Patricia was intended to be property settlement. Edward should be judicially estopped from changing his position in this proceeding and contending that the debt constitutes property settlement as opposed to maintenance in light of his contrary testimony and express agreement before the State Court.

This matter is a classic example for application of the doctrine. If Edward wanted to utilize the State Court proceeding to effect a dissolution of the parties' marriage, he must accept the burdens thereof as well as the benefits. The Court rejects his flagrant attempt to recharacterize as property settlement the obligation he freely and expressly undertook in the State Court for the bankruptcy expediency of discharging maintenance owed to Patricia. To allow otherwise, would undermine the expressly clear intent of the parties in their Agreement and effectively make a mockery of the testimony before the State Court.

Consequently, the Court finds that the $385,000.00 debt owed to Patricia by Edward, less the $3,000.00 previously paid to her by Edward, constitutes maintenance and thus is non-dischargeable under § 523(a)(5).

### B. *11 U.S.C. § 523(a)(15)*

Alternatively, in Count II of the complaint, Patricia argues that the debt owed by Edward to her is non-dischargeable under 11 U.S.C. § 523(a)(15), which provides that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

In order to except the debt from discharge under § 523(a)(15), Patricia must establish that she holds a claim against Edward, other than the kind described in § 523(a)(5), that was awarded by a court in the course of a divorce proceeding or separation. *Crosswhite*, 148 F.3d at 884. As the Court has found that

the relevant obligation is in the nature of maintenance and not property settlement, Patricia cannot meet her burden under Count II and loses under the alternative § 523(a)(15) theory.

■ If, the Court had found that the obligation to pay the debt owed to Patricia by Edward was not in the nature of support, alimony or maintenance, then the burden of coming forward shifts to Edward to show either (1) that he lacks the ability to pay the debt from income or property not needed to support himself and any dependents, or (2) that the discharge of this debt would be more beneficial to him than detrimental to his former spouse. *Crosswhite*, 148 F.3d at 884–85; *Lipira v. Kaczmarski (in re Kaczmarski)*, 245 B.R. 555, 564 (Bankr.N.D.Ill.2000); *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 764 (Bankr.N.D.Ill.) (citations omitted), *aff'd*, 199 B.R. 37 (N.D.Ill.1996); *Jenkins v. Jenkins (In re Jenkins)*, 202 B.R. 102, 104 (Bankr.C.D.Ill.1996). The debtor must meet the showing required on only one of the two prongs of § 523(a)(15) to prevent the debt from being excepted from discharge. *Paneras*, 195 B.R. at 404.

■ The debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of him and his dependents. *Jenkins*, 202 B.R. at 104; *Hill v. Hill (In re Hill)*, 184 B.R. 750, 754 (Bankr.N.D.Ill. 1995). Because the language of § 523(a)(15) mirrors the disposable income test found in 11 U.S.C. § 1325(b)(2), courts have utilized an analysis similar to that used in determining disposable income in Chapter 13 cases. *Hill*, 184 B.R. at 755; *Paneras*, 195 B.R. at 404; *Jenkins*, 202 B.R. at 104.

■ Determining the dischargeability of a debt under § 523(a)(15) requires the evaluation of several factors: (1) the debt-

or's ability to pay the subject debt, (2) the nondebtor spouse's ability to pay the subject debt, and (3) the financial repercussions to the non-debtor spouse of discharging the debt. *Jenkins*, 202 B.R. at 104–05. If the debtor is found to lack the ability to repay the debt, the inquiry ends at § 523(a)(15)(A) and the debt is deemed dischargeable. *Id.* at 105. If, however, the debtor is found to have the ability to repay the debt, the inquiry proceeds to § 523(a)(15)(B) to consider the nondebtor spouse's ability to pay the debt. *Id.*

■ Turning to § 523(a)(15)(B), the legislative history reveals that if discharging the debtor would inflict little or no detriment on the non-debtor spouse the debt must be discharged. Specifically it provides:

> For example, if a nondebtor spouse would suffer little detriment for the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

140 Cong. Rec. H10752–1 (daily ed. Oct. 4, 1994).

■ A "totality of the circumstances" test is the general method used for weighing benefit and detriment under § 523(a)(15)(B). *Crosswhite*, 148 F.3d at 888–89. Courts examining the issue have weighed several factors which include: (1) the income and expenses of both parties; (2) the nature of the debt; (3) the former spouse's ability to pay; (4) the number of dependents; and (5) the reaffirmation of any debts. *See Rossi v. Rossi (In re Rossi)*, 1999 WL 253124 at *6 (Bankr.

N.D.Ill. April 27, 1999); *Paneras,* 195 B.R. at 404 (citations omitted); *Hill,* 184 B.R. at 756; *Jenkins,* 202 B.R. at 105. Some of those factors—the first, second, third and fourth—have been considered here. There is no evidence to show that Edward reaffirmed any pre-petition debts pursuant to 11 U.S.C. § 524(c) and (d).

■ Several courts have found that equity weighs against discharge where the debtor has the ability to pay a debt. *Carroll v. Carroll (In re Carroll),* 187 B.R. 197, 201 (Bankr.S.D.Ohio 1995) ("Discharging this obligation would simply provide Debtor with additional disposable income to 'use at his discretion.' This is not the type of benefit that § 523(a)(15)(B) sought to protect."); *Florio v. Florio (In re Florio),* 187 B.R. 654, 658 (Bankr.W.D.Mo. 1995) (quoting *Carroll).* In determining whether a debtor has the ability to pay a debt, the Court must consider not only whether the debtor could pay the debt in a lump sum, but also whether the debtor has the ability to pay the claim in installments over time from future income. *Taylor,* 191 B.R. at 767; *Jenkins,* 202 B.R. at 105.

■ Application of the above authorities to the matter at bar and the evidence adduced at trial requires the Court to find in favor of Edward on Count II. The Court finds that Edward has demonstrated that he lacks the present ability to pay the debt from income or property not needed to support himself or his dependents. The credible testimony and documentary evidence offered at trial demonstrated that Edward is presently unable or not reasonably likely in the foreseeable future to pay the remaining $382,000.00 debt to Patricia.

On December 29, 2000, Edward filed his Schedule J in his bankruptcy case, which disclosed monthly expenses of $2,787.00. *See* Patricia's Exhibit No. 6 and Edward's Exhibit No. 9. On May 11, 2001, Edward filed an amended Schedule J which re- flected monthly expenses of $1,887.00. *See* Patricia's Exhibit No. 9 and Edward's Exhibit No. 9. The amended Schedule J showed that Edward had a deficit each month of $237.00. In September 2002, Edward prepared an updated Schedule J for purposes of the trial, which reflected total monthly expenses of $6,704.00 and total monthly income of $6,500.00 with a monthly deficit of $204.00. *See* Edward's Exhibit No. 11. Edward's Statement of Financial Affairs, which was filed on May 11, 2001, disclosed that on September 21, 2000 he paid to Patsy Whitney, his new wife, the sum of $71,000.00 from the sale of real property utilized as his residence. *See* Patricia's Exhibit No. 10. On July 5, 2001, Edward filed his amended Schedule B, which reflected an interest in a 401(k) account in the amount of $116,000.00. *See* Patricia's Exhibit No. 11. Edward testified that he liquidated the entire account over the past years in order to pay his living expenses. During 2001, Edward received income from Lanan Products, Inc. in the sum of $54,500.00. *See* Patricia's Exhibit No. 13 and Edward's Exhibit No. 10. Finally, Edward testified that he has not filed income tax returns for the years 1999, 2000 and 2001, so he may have unliquidated, non-dischargeable, substantial income tax liabilities, plus interest and penalties.

Edward testified that he is unable to secure more lucrative employment. Edward is now 60 years old with past kidney problems. He has no health insurance for himself and has not had a physical examination for years. His present wife is unemployed and has no regular income. In the recent past, he has been forced to live in a motel and his present marital relationship is difficult and strained.

Patricia notes that Edward's Exhibit No. 11, which is the Schedule J prepared for trial, differs from the amended Sched-

ule J filed on May 11, 2001. Patricia maintains that this discrepancy makes it clear that Edward's estimates of his expenses are not credible. The Court finds that the difference in Edward's amended Schedule J from May 2001 and Edward's Exhibit No. 11 does not necessarily render Edward's testimony incredible. Edward testified that the approximate $1,000.00 monthly increase was due to the increase in his salary. A review of his monthly living expenses, which he accurately described as "bare bones" and living paycheck to paycheck, shows that Edward lacks the present ability to pay the debt to Patricia and has no probable likelihood of earning greater income over the reasonably foreseeable future with which to pay the over $380,000.00 balance owed on the subject debt. In short, his situation post-dissolution, and even postbankruptcy, has gone from bad to worse.

Patricia, on the other hand, is 46 years old and in good health. She testified that she is presently employed by McGunn Safe Company, L.L.C. pursuant to an employment agreement that terminates on May 23, 2003 and may not be extended. *See* Edward's Exhibit No. 6. She receives annual gross compensation in the sum of $90,000.00 and annual net compensation in the sum of $70,512.00, notwithstanding the provision in the employment agreement for annual gross compensation at the rate of $120,000.00 per year. Patricia also testified that she has $275,000.00 in a retirement fund and has a certificate of deposit in the sum of $5,200.00. Further, Patricia testified that three of the four children presently reside with her. Patricia purchased a single-family residence in Western Springs, Illinois on March 31, 1999 for the sum of $228,500.00. The property is encumbered by a mortgage in the sum of $198,000.00. *See* Patricia's Exhibit No. 4. Patricia makes monthly mortgage payments in the sum of $1,703.60. *Id.* Patricia

testified that she is indebted to her former attorneys in the dissolution proceeding in the aggregate sum of $24,500.00. Moreover, Patricia stated that she is indebted to an orthodontist in the sum of $1,800.00. Patricia testified that her monthly expenses total $4,685.00 and her monthly income totals $6,224.00, which includes the monthly $800.00 child support payment from Edward. Patricia has a monthly surplus of $1,500.00. This amount has been reduced by $800.00 each month for approximately the past six months because, according to Patricia, Edward has not made those monthly child support payments. Patricia testified that the excess money is utilized to pay her attorneys' fees, an orthodontist bill and improvements she has made to her home.

Patricia is in a relatively better overall economic situation than Edward at this point in time. Her situation has improved since the marital dissolution, while Edward's economic condition has deteriorated. Pivotal to this determination is Edward's age, his negative cash flow and his testimony that he is unable to secure more lucrative employment. In contrast, the evidence demonstrated that Patricia is in a positive cash flow position. Hence, the Court finds that Edward does not have the present or likely future ability to pay the debt to Patricia for purposes of § 523(a)(15)(A). Consequently, the Court holds that the debt owed to Patricia is dischargeable under § 523(a)(15).

## V. CONCLUSION

For the foregoing reasons, the debt owed by Edward to Patricia is non-dischargeable under 11 U.S.C. § 523(a)(5), but the debt is dischargeable under 11 U.S.C. § 523(a)(15). Edward's motion for directed findings is denied as to Count I of the complaint and is granted as to Count II of the complaint

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.