John Francis BEALE, Appellant,

v.

Catherine A. KURTZ, Appellee.

In re John Francis Beale, Debtor.

Catherine A. Kurtz, Plaintiff,

v.

John Francis Beale, Defendant.

No. 2:07–cv–95–LJM–WGH.
Bankruptcy No. 05–83535–FJO–7.
Adversary No. 06–58008.

United States District Court,
S.D. Indiana,
Terre Haute Division.

Feb. 7, 2008.

B. Scott Skillman, B. Scott Skillman, P.C., Terre Haute, IN, for Debtor/Defendant.

Thomas S Clary, II, Wright, Shagley & Lowery, Terre Haute, IN, for Plaintiff.

## ORDER ON APPEAL FROM BANKRUPTCY COURT'S RULING

LARRY J. McKINNEY, District Judge.

This is an appeal from a ruling in the Bankruptcy Court brought by appellant, John Francis Beale ("Beale"), pursuant to 28 U.S.C. § 158. Specifically, Beale challenges the Bankruptcy Court's decision that a debt owed to his ex-wife, Catherine A. Kurtz ("Kurtz"), is non-dischargeable.

For the reasons discussed herein, the ruling in the Bankruptcy Court is **AFFIRMED.**

## I. BACKGROUND

The relevant history regarding the debt in question dates back to the time of Beale's divorce from Kurtz. Beale and Kurtz executed a Property Settlement Agreement in January 2005. *See* Pl.'s Ex. 12. Pursuant to the terms of that agreement, Kurtz would receive, *inter alia*, a 2003 Jeep Cherokee ("the Jeep") and Beale was expected to make his best efforts to refinance the vehicle, be responsible for the same, and hold Kurtz harmless on the debt. Among other things, Beale received the marital home, but he was obligated to pay Kurtz $3,600.00 for draperies that Kurtz purchased on her credit card for the marital home. This arrangement for the distribution of assets was approved and adopted by the Vigo Superior Court on February 1, 2005, when it entered the Decree of Dissolution dissolving the couple's marriage.[1] *See* Pl.'s Ex. 11.

Approximately four and a half months after the Decree of Dissolution was entered, Beale and Kurtz signed an agreement whereby Kurtz would relinquish the $3,600.00 credit card debt in exchange for Beale's agreement to finance the trade-in of the Jeep for a 2005 Dodge Grand Caravan. *See* Pl.'s Ex. 16. They also both signed a Retail Installment Contract and Security Agreement with Vigo Dodge, Inc., for the new vehicle. *See* Pl.'s Ex. 17. The amount financed was the same amount of the debt owed on the Jeep, $15,981.00. *See* Trial Tr. at 67–68; Pl.'s Ex. 17. In addition, Kurtz was required to make a cash down payment of $5,551.25 for the new vehicle. *See id.*

On October 15, 2005, less than four months after the trade-in of the Jeep and signing of the Retail Installment Contract and Security Agreement, Beale filed a Petition for Chapter 7 Bankruptcy seeking to discharge his debts, including the one owed to Kurtz for the Jeep. Kurtz brought an adversary proceeding against Beale, opposing the attempt to discharge the debt owed to her on the basis that the debt was non-dischargeable pursuant to 11 U.S.C. § 523(a)(15). Following a trial, the Bankruptcy Court agreed with Kurtz and concluded that the debt owed to Kurtz was non-dischargeable under § 523(a)(15) and ordered Beale to pay it.[2] This appeal followed.

1. The Court notes that the record reveals that about two months after the Decree of Dissolution approving the Property Settlement Agreement, which required Beale to undertake his best efforts to refinance the Jeep, Beale purchased a Jeep Rubicon for $17,389.14 using a check drawn on Beale's account at Terre Haute Savings Bank. *See* Trial Tr. at 45–46; Pl.'s Ex. 21.

2. The Bankruptcy Court also considered finding that the debts were non-dischargeable under § 523(a)(2) but, as reflected in that court's Corrected Order, ultimately based its decision solely on subsection (a)(15).

## II. APPLICABLE STANDARDS OF REVIEW

When reviewing a decision of the Bankruptcy Court, this Court acts as an appellate tribunal and is governed by the traditional standards of appellate review. Specifically, the Court "is constrained to accept the [B]ankruptcy [C]ourt's findings of fact unless they are clearly erroneous." *In re Excalibur Auto. Corp.,* 859 F.2d 454, 457 n. 3 (7th Cir.1988). *See also In re FedPak Sys., Inc.,* 80 F.3d 207, 211 (7th Cir.1996); *In re Longardner & Assocs., Inc.,* 855 F.2d 455, 459 (7th Cir.1988). "A finding is clearly erroneous if upon review of the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Graham v. Lennington,* 74 B.R. 963, 965 (S.D.Ind.1987). "Generally, as long as the bankruptcy judge's inferences are reasonable and supported by the evidence, they will not be disturbed." *Id.*

Conclusions of law made by the Bankruptcy Court, however, must be reviewed *de novo. See Excalibur Auto. Corp.,* 859 F.2d at 457 n. 3 (citing *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985)); *Longardner & Assocs., Inc.,* 855 F.2d at 459. Likewise, where the challenged finding is a mixture of law and fact, the clearly erroneous standard is also inapplicable. See *Graham,* 74 B.R. at 965.

With these general standards in mind, the Court addresses the issues raised in the instant appeal.

## III. DISCUSSION

Beale raises three questions on this appeal: whether the Bankruptcy Court erred by (1) concluding that the debt owed to Kurtz was non-dischargeable under § 523(a)(15); (2) admitting certain evidence regarding Beale's ability to pay the debt; and (3) finding that Beale did not satisfy his burden of establishing that the debt should be discharged pursuant to § 523(a)(15)(B). The Court addresses each of these issues in turn.

### A. WHETHER THE DEBT WAS NON–DISCHARGEABLE UNDER § 523(a)(15)

Beale first argues that the Bankruptcy Court erred in finding the debt non-dischargeable under § 523(a)(15). Beale argues that the debt arises from an agreement that was unrelated to the Property Settlement Agreement and which actually extinguished the obligations under that agreement. In addition, he contends that the statutory provision should be strictly construed against Kurtz. In response, Kurtz contends that the provision applies because the debt was made in connection with or related to the Decree of Dissolution and Property Settlement Agreement, and she asserts that Beale's extinguishment argument fails because the later agreement in no way evinces an intent to replace the Property Settlement Agreement in its entirety. This Court agrees with Kurtz.

First, under normal circumstances an exception to a discharge provision is strictly construed against a creditor and requires the creditor to prove by a preponderance of the evidence that a debt is not dischargeable. However, this general policy does not hold true when a debt arises from a divorce or separation agreement. When that happens, the policy is "tempered" and the exception is construed more liberally in favor of the creditor. *See In re Crosswhite,* 148 F.3d 879, 881–82 (7th Cir.1998). This shift reflects a long-standing policy of protecting a debtor's former spouse and children. *See id.* at 882 (noting that legislative history of § 523(a)(15) reveals the same policy interest that is found in § 523(a)(5)). Thus, Beale is incorrect to insist that the statuto-

ry provision be strictly construed against Kurtz.

■ Further, the Court agrees with the Bankruptcy Court that the debt in question falls under subsection (a)(15). That provision applies to property settlement debts that are incurred "in the course of a divorce or separation agreement or in connection with a separation agreement, divorce decree or order a court of record...." 11 U.S.C. § 523(a)(15). This provision is intended to cover divorce-related debts that " 'should not justifiably be discharged.' " *In re Crosswhite*, 148 F.3d at 882 (quoting King, COLLIER ON BANKRUPTCY ¶ 523.21). This Court agrees with the Bankruptcy Court's prior decision in *Boyd–Smith v. Brock (In re Brock)*, 227 B.R. 813, 814 (Bankr.S.D.Ind.1997), where the court concluded that the plain language of this provision indicates that it applies when the parties entered into an agreement regarding a marital debt or where the dissolution court orders one of the parties to pay a marital debt.

Applying this understanding to the debt in question, the Court concludes that the debt is covered by subsection (a)(15). Beale was ordered by the dissolution court to make his best efforts to refinance the vehicle and to hold Kurtz harmless on the debt. He opted to buy himself a new vehicle and then later agreed to finance the trade-in of the Jeep for a 2005 Dodge Grand Caravan and be responsible for the debt, which was the same amount as that owed on the Jeep. In exchange, Kurtz agreed to relinquish another debt that Beale owed. The agreement specifically referenced the decree of dissolution. *See* Pl.'s Ex. 16.

■ Based on the foregoing, the Court has no trouble concluding that the agreement concerned a marital debt. Beale essentially agreed to remain responsible for

the amount that he was obligated to pay via the new loan, which, practically speaking, resulted in a refinancing of the old loan. The debt was certainly related to the old one, and the circumstances suggest that the debt is one from which Beale should not justifiably be discharged because it would be unfair to release him from an obligation that he reaffirmed.

Moreover, the Court is unpersuaded by Beale's reliance on state law to support his claim that the old debt was extinguished. Beale's argument rests on Indiana law governing novations and substituted contracts. One of the elements of the applicable test is that there must be an extinguishment of the old contract in favor of the new one. *See, e.g., Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind.1994); *Calvary Temple Church, Inc. v. Paino*, 827 N.E.2d 125, 136 (Ind.Ct.App. 2005) (applying novation test to a substituted contract). Here, the new agreement does not express an intent to extinguish the Property Settlement Agreement or to replace all of its provisions. Instead, it simply involved two of those provisions: the credit card debt for the draperies in the marital home and the Jeep. Moreover, Kurtz did not relinquish Beale from his obligation concerning the Jeep. Therefore, the Court finds that Indiana law on novations and substituted contracts does not apply in this case and that Beale's reliance on that law is misplaced.

In summary, the Court concludes that Beale has failed to demonstrate that the Bankruptcy Court erred in finding the debt non-dischargeable under § 523(a)(15).

### B. ADMISSION OF EVIDENCE

Beale next challenges the Bankruptcy Court's admission of several exhibits, specifically Plaintiff's Exhibits 8, 9, 10, 13, 14, and 21.[3] These exhibits are financial state-

---

**3.** The Court notes that it is somewhat unclear whether Beale is objecting to Plaintiff's Ex-

ments for Beale's bank and retirement accounts. Beale claims that the exhibits contain inadmissible hearsay and that Kurtz failed to lay any foundation for their admission.

■ As an initial matter, the Court notes that the Bankruptcy Court indicated that it relied on witness testimony to reach its conclusions rather than the exhibits. *See* Trial Tr. at 129. Thus, any error in the admission of the exhibits was harmless. In fact, the admission of at least one of the exhibits, Exhibit 13, was particularly harmless because the information contained therein was duplicative of some of the same information contained in Beale's own exhibit. *Compare* Pl.'s Ex. 13 *with* Def.'s Ex. B. Notwithstanding the harmlessness of the admission of the exhibits in this case, the Court concludes that the Bankruptcy Court did not abuse its discretion in admitting the documents.

First, there is no issue regarding the authenticity of the documents. Beale admitted that the records were from his financial institutions and that he provided them to Kurtz during discovery. As the Seventh Circuit has noted, "the very act of production [i]s implicit authentication." *United States v. Brown,* 688 F.2d 1112, 1115–16 (7th Cir.1982). Therefore, there is no question that the records are what they purport to be.

■ Further, even though the documents may contain hearsay, there was no abuse in admitting them. Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for business records. As the Fifth Circuit has observed, the issue of admissibility under this provision is largely a matter of trustworthiness. *See Missis-*

*sippi River Grain Elevator, Inc. v. Bartlett & Co., Grain,* 659 F.2d 1314, 1319 (5th Cir.1981) (quoting *United States v. Veytia–Bravo,* 603 F.2d 1187, 1191–92 (5th Cir. 1979), *cert denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980)). In addition, the Tenth Circuit has recognized that "a foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in case of banks and similar statements." *Fed. Deposit Ins. Corp. v. Staudinger,* 797 F.2d 908, 910 (10th Cir.1986) (quoting 4 Jack B. Weinstein, *Weinstein's Evidence* ¶ 803(6)[02] (1985)). *See also United States v. Johnson,* 971 F.2d 562, 571 (10th Cir.1992) (providing that "bank records are particularly suitable for admission under Rule 803(6) in light of the fastidious nature of record keeping in financial institutions, which is often required by governmental regulation"). Finally, the Court is cognizant of the general purpose of the hearsay rules to preclude the admission of evidence that is considered to be less reliable than in-person testimony while not frustrating justice by preventing the admission of evidence that can be deemed trustworthy and reliable. *See United States v. Hernandez,* 333 F.3d 1168, 1179 (10th Cir.2003); *Prudential Ins. Co. v. Kaltofen,* No. 90–3750, 1991 WL 275581, *8 (7th Cir. Dec. 23, 1991) (unpublished decision).

Here, the nature of the exhibits and the circumstances under which they were received was sufficient to establish their status as business records kept in the ordinary course of business, and there is no concern regarding their trustworthiness. Beale acknowledged that the exhibits were statements from his banks and retirement

hibit 13 because he later includes that exhibit in a list of those exhibits (including his own) that provide limited evidence on his ability to pay the debts. *See* Appellant's Br. at 8 (Dock-

et No. 6). However, for purposes of this appeal, the Court will include Plaintiff's Exhibit 13 in the list of those that Beale finds objectionable.

account, and there is no serious dispute regarding the transactions that are reflected on the exhibits. It is common knowledge that such statements on financial accounts are prepared daily and that they consist of debit and credit entries based on the deposits received, withdrawals or distributions made, and any service charges to the account. While mistakes may be made in such entries, such matters may be developed on cross-examination and should not affect the admissibility of the statements themselves. Indeed, the accuracy of the documents goes to their weight rather than their admissibility.

Even if the business records exception does not strictly apply, the exhibits could have been admitted under the residual exception. *See* Fed.R.Evid. 807. As noted, the circumstances underlying the documents demonstrate their trustworthiness, and there is no question that the documents were probative on the issues under subsections (a)(15)(A) and (a)(15)(B). Accordingly, for all of the foregoing reasons, the Court concludes that the Bankruptcy Court did not abuse its discretion in admitting the exhibits.

As a final matter, the Court pauses to note with some concern Beale's suggestion that the Bankruptcy Court improperly concluded that he had the ability to pay the debts based on social security funds. *See* Appellant's Br. at 8 (Docket No. 6). A review of the transcript reveals that Beale's suggestion is inaccurate. The Bankruptcy Court specifically concluded that Beale had the ability to repay the debt based on his pension. *See* Trial Tr. at 129. Thereafter, the Bankruptcy Court simply noted in passing that Beale would be eligible for social security in a few years. *See id.* Thus, Beale's suggestion misstates the Bankruptcy Court's actual conclusion, and counsel is advised not to take such liberties with his representations to this Court in the future.

## C. THE BANKRUPTCY COURT'S CONSIDERATION UNDER § 523(a)(15)(B)

Beale's final issue involves the Bankruptcy Court's determination under § 523(a)(15)(B). Beale devotes a single paragraph to this issue and contends that the Bankruptcy Court failed "to apply the balancing test to determine the relative ability of the parties to pay." Appellant's Br. at 9 (Docket No. 6). Beale argues that the record reveals that he cannot pay the debt but that Kurtz is able to pay the debt. *See id.* Therefore, Beale concludes that the Bankruptcy Court should have found the debt dischargeable pursuant to § 523(a)(15)(B). *See id.*

As an initial matter, the Court notes that Beale has not specifically raised an issue under subsection (a)(15)(A) regarding the Bankruptcy Court's conclusion that Beale was able to pay the debt from his pension. Instead, he focuses exclusively on the balancing test under subsection (a)(15)(B). Therefore, the Court concludes that Beale has waived any issue with respect to the Bankruptcy Court's determination that he has funds to pay the debt. Thus, this Court will only consider the Bankruptcy Court's decision as it relates to subsection (a)(15)(B).

■ The Court finds that Beale has failed to demonstrate that the Bankruptcy Court erred in necessarily concluding that Beale did not satisfy his burden under § 523(a)(15)(B). The primary flaw with Beale's argument is that he misapprehends the test; the correct test under subsection (a)(15)(B) is not a simple balancing of who was in the best position to pay the debt. Instead, the statute requires a balancing of whether discharging the debt "would result in a benefit to the debtor that outweighs the detrimental consequences" to

the former spouse. 11 U.S.C. § 523(a)(15)(B). In making that determination, the Seventh Circuit has approved the practice of examining the "totality of the circumstances." *See In re Crosswhite*, 148 F.3d at 889. The circumstances often weighed by bankruptcy courts include such things as the income and expenses of the parties, the nature of the debt, whether the parties are jointly liable on the debt, the non-debtor spouse's ability to pay, the number of dependents, and the reaffirmation of any debts. *See, e.g., McGunn v. McGunn (In re McGunn)*, 284 B.R. 855, 867 (Bankr.N.D.Ill.2002); *Hill v. Hill (In re Hill)*, 184 B.R. 750, 756 (Bankr.N.D.Ill. 1995). Some courts also consider how equity weighs into the equation and conclude that discharge is inappropriate where the debtor has the ability to pay the debt. *See McGunn*, 284 B.R. at 868 (citing *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 201 (Bankr.S.D.Ohio 1995), and *Florio v. Florio (In re Florio)*, 187 B.R. 654, 658 (Bkrtcy.W.D.Mo.1995)).

 In this case, Beale fails to point to any factor that the Bankruptcy Court overlooked or did not consider. Moreover, this Court presumes that the Bankruptcy Court was aware of the various circumstances because the record reveals that the Bankruptcy Court was presented with a myriad of information, including the parties' respective incomes, their debts, and bank and retirement account records. With respect to Beale, the evidence showed that he had sums in three different bank accounts, a pension for over $20,000.00 per year, a substantial retirement account of over $90,000.00 at the end of 2005 and a transfer of over $40,000.00 in 2006, and had received salaries and commissions from several different organizations. In addition, Beale admitted that he lived with a girlfriend at her house. Although he presented no evidence of her contribution to the claimed living expenses, it is not unreasonable to expect that she would share in those expenses. *See, e.g., In re Crosswhite*, 148 F.3d at 889 (concluding that bankruptcy court should consider the extent of a live-in girlfriend's contribution to the debtor's economic condition). Finally, Beale possesses a number of licenses and qualifications that conceivably make him more marketable if he chose to be employed full-time rather than being "semi-retired." *See, e.g., In re Jodoin*, 209 B.R. 132, 142 (9th Cir. BAP 1997) (taking into consideration the prospective income that a debtor should earn).

In addition to these circumstances, the Bankruptcy Court was presented with evidence suggesting a lack of good faith efforts by Beale to comply with the Property Settlement Agreement. Specifically, shortly after Beale was ordered to take responsibility for the debt, he purchased a new vehicle for himself. Subsequently, he agreed to accept responsibility for financing the trade-in of the Jeep for a new van and then, just a few months later, he filed for bankruptcy.

Finally, the Bankruptcy Court was presented with evidence regarding Kurtz's circumstances. She resides with a roommate and a dependent, for whom she receives no support. Further, Kurtz makes roughly $11.00 per hour, has several large outstanding debts, and very little disposable income in any bank accounts.[4]

---

**4.** Beale incorrectly asserts that Kurtz has the ability to pay the debt because she obtained a secured loan to make the payments and that Kurtz pays for the care of several animals, and he incorrectly suggests that she has $19,000.00 available to her. *See* Appellant's Br. at 9. The record reveals that these statements are not true. First, Kurtz testified that she used money from an inheritance, money that has since been depleted during a period of unemployment, to secure a loan for a 1998 Jeep that she was required to refinance pursu-

Based on the foregoing, this Court cannot conclude that the balance of the circumstances clearly weighs in Beale's favor. Therefore, the Court finds no reason to disturb the Bankruptcy Court's decision that the debt was not dischargeable.

## IV. *CONCLUSION*

For the reasons set forth herein, the Court **AFFIRMS** the judgment of the Bankruptcy Court.

IT IS SO ORDERED.

ant to the Property Settlement Agreement. *See* Trial Tr. at 95. That vehicle is clearly not the one involving the debt in question in this appeal. Second, Kurtz indicated that her roommate pays for the pet food for the animals, including the four horses that belong to the roommate. *See id.* at 97, 110. Finally, with respect to the alleged $19,000.00 in available funds, Kurtz specifically indicated that this money was not available to her. Part of that amount was in a secured account to pay for the 1998 Jeep and the majority was unavailable because it had been "loaned out" and not repaid. *See id.* at 105.